STATE of Wisconsin, Plaintiff-Respondent,

v.

Jesse J. DELEBREAU, Defendant-Appellant.†

Court of Appeals

*No. 2013AP1108–CR. Submitted on briefs November 19, 2013.
—Decided January 7, 2014.*

2014 WI App 21

(Also reported in 843 N.W.2d 441.)

† Petition for Review granted May 22, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Daniel R. Goggin II* of *Goggin & Goggin, LLC*, Neenah.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jacob J. Wittwer*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. HOOVER, P.J. Jesse Delebreau appeals a judgment of conviction for one charge of party to the crime of delivering less than three grams of heroin, second and subsequent offense, as a repeater. Delebreau argues the State violated his Sixth Amendment right to counsel when it obtained two statements from him while he was in custody and after he had appeared at arraignment with appointed counsel. Accordingly, Delebreau argues the trial court erroneously denied his motion to suppress the statements. We affirm.

## BACKGROUND

¶ 2. Delebreau was taken into custody on a probation hold on March 31, 2011. At that time, Delebreau was the subject of an ongoing drug investigation, and deputy Roman Aronstein had referred charges to the district attorney's office. Sometime between April 7 and April 9, Delebreau submitted a request to speak with someone from the local drug task force. The State charged Delebreau pursuant to Aronstein's referral on April 14. That same day, Delebreau appeared in court represented by a public defender.

¶ 3. Deputy Aronstein responded to Delebreau's request and met with him in the Brown County jail on April 15. Delebreau received *Miranda* warnings, waived

648

his rights, and gave a recorded statement.[1] Aronstein returned on April 18 with a written statement. Delebreau again waived his *Miranda* rights, and he reviewed and signed the statement.

¶ 4. Delebreau later moved to suppress his statements. The motion was denied, and Delebreau was convicted following a trial at which the State utilized the statements. He now appeals.

## DISCUSSION

¶ 5. Delebreau argues the State violated his Sixth Amendment right to counsel because, he asserts, a mere *Miranda* waiver is insufficient to waive the right after a defendant has been charged and is represented by counsel. Delebreau argues that under these circumstances, the State must engage in the more expansive waiver inquiry that is required when a defendant waives his right to counsel in court. We easily dispense with Delebreau's specific argument. However, to reach the issue, we first must ford the muddy waters left by *State v. Forbush*, 2011 WI 25, 332 Wis. 2d 620, 796 N.W.2d 741 (*Forbush II*). This requires some background.

¶ 6. In 2000, the Wisconsin Supreme Court held that the Sixth Amendment prohibits police from questioning someone represented by an attorney on criminal charges without the attorney present. *See State v. Dagnall*, 2000 WI 82, ¶ 67, 236 Wis. 2d 339, 612 N.W.2d 680. As the dissent explained:

> Such a bright-line rule means that law enforcement officials may not even question a person such as Dagnall once charges are filed and the person has an

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

attorney. According to the majority, it makes no difference that such an individual is given *Miranda* warnings, waives his or her Fifth and Sixth Amendment rights, and agrees to talk to police officers about the crime charged.

*Id.*, ¶ 69 (Crooks, J., dissenting). The *Dagnall* decision relied extensively on *Michigan v. Jackson*, 475 U.S. 625 (1986). *Jackson*, however, was later overruled in *Montejo v. Louisiana*, 556 U.S. 778 (2009). The *Montejo* Court held that an accused's representation by counsel at a preliminary court proceeding does not render presumptively invalid any subsequent waiver of the right to counsel at a police-initiated custodial interview. *See id.* at 792–97.

¶ 7. This brings us to *State v. Forbush*, 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476 (Ct. App. 2009) (*Forbush I*), *rev'd, Forbush II*, 332 Wis. 2d 620. In that case, the circuit court had suppressed the defendant's statements pursuant to the *Dagnall* rule. *Id.*, ¶ 1. Sometime after the circuit court's decision, *Montejo* was decided. *Id.*, ¶ 2. We reversed the circuit court, holding, "We conclude that *Montejo* effectively overrules *Dagnall*."[2] *Id.* Upon further review, our supreme court reversed and upheld the circuit court's application of the *Dagnall* rule. *Forbush II*, 332 Wis. 2d 620.

¶ 8. This is where our boots get muddy. In *Forbush II*, the seven justices proffered four rationales; four justices proffered three distinct rationales for

[2] We further held that the Wisconsin Constitution did not afford any greater protection than the Sixth Amendment. *State v. Forbush*, 2010 WI App 11, ¶ 2, 323 Wis. 2d 258, 779 N.W.2d 476 (Ct. App. 2009) (*Forbush I*), *rev'd*, 2011 WI 25, 332 Wis. 2d 620, 796 N.W.2d 741. However, because here Delebreau relies solely on the Sixth Amendment, we need not address this issue.

affirming the circuit court, and three dissenters were agreed in their separate rationale. We will briefly summarize the decision.

¶ 9. Justice Roggensack wrote the lead opinion, which no other justice joined. Justice Roggensack concluded that *Montejo* overruled *Dagnall* only with respect to defendants who were appointed counsel; those who retained their own attorneys were still entitled to the protection of the *Dagnall* rule. *Forbush II*, 332 Wis. 2d 620, ¶¶ 27, 34–35, 38–39, 51.

¶ 10. Chief Justice Abrahamson concurred, joined by Justice Bradley. This opinion concluded *Montejo* overruled *Dagnall*, but determined the *Dagnall* rule should nonetheless survive under the Wisconsin Constitution. *Id.*, ¶¶ 60, 64, 79 (Abrahamson, C.J., concurring).

¶ 11. Justice Prosser also concurred, completing the four-justice majority. Justice Prosser concluded the defendant was entitled to the protection of the *Dagnall* rule because his statements were obtained long before *Montejo* was decided, when *Dagnall* was still controlling law. *Id.*, ¶¶ 88, 92–93, 103 ("At the time of Forbush's interrogation, the advent of the *Montejo* ruling was barely a glimmer in Justice Scalia's eye.") (Prosser, J., concurring). Justice Prosser declined to provide a rule for future cases, observing:

> The principles stated above do not address the future. It is, however, important to note that the Supreme Court invited the states to preserve existing law that police-initiated questioning of accused persons charged with crimes and represented by counsel is presumed invalid and will lead to exclusion of incriminating evidence.
>
> . . . .

Whether rights afforded by the Sixth Amendment will require additional protection in this state remains to be determined.

*Id.*, ¶¶ 106, 114–16.

¶ 12. Finally, Justices Crooks, Ziegler, and Gableman dissented. They concluded that *Montejo* overruled *Dagnall* and that the Wisconsin Constitution afforded no greater protection than the Sixth Amendment. *Id.*, ¶¶ 118, 136–38, 146, 150 (Crooks, J., dissenting).

¶ 13. The foregoing represents the existing landscape. The issue has not been addressed by the Wisconsin appellate courts since *Forbush II*.

¶ 14. In *Forbush I*, we held that *Montejo* overruled *Dagnall* because *Dagnall* had relied solely on the Sixth Amendment. *Forbush I*, 323 Wis. 2d 258, ¶ 2. On review, five justices expressly agreed. We therefore conclude that portion of our holding remains good law.[3] *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶¶ 44, 91, 326 Wis. 2d 729, 786 N.W.2d 78 ("Holdings not specifically reversed on appeal retain precedential value.") (majority and dissent); *see also Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (court of appeals may not overrule, modify, or withdraw language from a prior published opinion).[4]

---

[3] Delebreau apparently agrees. While the State discusses the issue at some length in its response brief, Delebreau's briefs do not mention *Forbush II*, and he cites *Forbrush I* only in passing—improperly—without noting its reversal. In any event, Delebreau concedes the issue by failing to reply. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

[4] We note that, at the time of this writing, Westlaw has a "yellow flag" indicator assigned to *State v. Dagnall*, 2000 WI 82, ¶ 67, 236 Wis. 2d 339, 612 N.W.2d 680. This indicates "[s]ome

¶ 15. Finally, we reach Delebreau's argument. Delebreau contends a mere *Miranda* waiver is insufficient to waive the Sixth Amendment right to counsel after a defendant has been charged and is represented by counsel. Delebreau observes that to waive the right in court, a more demanding inquiry is required, citing *Faretta v. California*, 422 U.S. 806 (1975), and *State v. Imani*, 2010 WI 66, 326 Wis. 2d 179, 786 N.W.2d 40.

¶ 16. In *Faretta*, the Court held:

> When an accused manages his [or her] own defense, he [or she] relinquishes . . . many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself [or herself], the accused must "knowingly and intelligently" forgo those relinquished benefits. [I]n order [to] competently and intelligently . . . choose self-representation, he [or she] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he [or she] knows what he [or she] is doing and [the] choice is made with eyes open."

*Faretta*, 422 U.S. at 835 (citations omitted). In *Imani*, the court explained:

> "So important is the right to attorney representation in a criminal proceeding that nonwaiver is presumed." . . . In [*State v. Klessig*, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997),] this court mandated the circuit court's use of a colloquy in order to prove the defendant's valid waiver. . . .
>
> Accordingly, to prove a valid waiver of counsel, the circuit court must conduct a colloquy designed to ensure the following:

negative history but not overruled." *Forbush I*, 323 Wis. 2d 258, on the other hand, carries a "red flag," indicating it is "[n]o longer good for at least one point of law."

653

> [T]he defendant: (1) made a deliberate choice to proceed without counsel, (2) was aware of the difficulties and disadvantages of self-representation, (3) was aware of the seriousness of the charge or charges against him, and (4) was aware of the general range of penalties that could have been imposed on him . . . .

> [*Id.*] "If the circuit court fails to conduct such a colloquy, a reviewing court may not find, based on the record, that there was a valid waiver of counsel." *Id.*

*Imani*, 326 Wis. 2d 179, ¶¶ 22–23 (citations omitted).

█

¶ 17. Delebreau contends it is improper to apply different standards to waive the Sixth Amendment right, depending only upon whether waiver occurs before a court or an investigating officer. To begin with, Delebreau's argument is poorly developed and lacks proper pinpoint case citations. We may reject it on that basis alone. *State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994). Additionally, it is evident from the quotations above that *Faretta* and *Imani/Klessig* were concerned with a different type of waiver: a complete waiver of the right to counsel, as opposed to one limited in time and scope. It is therefore not unreasonable that different standards would apply. More importantly, however, Delebreau's argument is foreclosed by *Montejo*.

¶ 18. *Montejo* expressly held that a *Miranda* waiver can sufficiently waive the Sixth Amendment right to counsel:

> [W]hen a defendant is read his [or her] *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that

654

typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment:

> As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.

[*Patterson v. Illinois*, 487 U.S. 285, 296 (1988).]

> The *only* question raised by this case, and the only one addressed by the *Jackson* rule, is whether courts must *presume* that such a waiver is invalid under certain circumstances.

*Montejo*, 556 U.S. at 786–87. As noted previously, *Montejo* overruled the *Jackson* rule, which presumed a waiver to be invalid when a charged defendant was already represented. *See id.* at 792–97. Ultimately, the court held:

> In sum, when the marginal benefits of the *Jackson* rule are weighed against its substantial costs to the truth-seeking process and the criminal justice system, we readily conclude that the rule does not "pay its way," *United States v. Leon*, [468 U.S. 897, 907–08, n.6 (1984).] *Michigan v. Jackson* should be and now is overruled.

*Id.* at 797.

¶ 19. In his reply brief, Delebreau states:

> [T]he *Montejo* court does not explain why the standard for waiver of counsel by a defendant (after a prosecution has begun) would be subject to one standard if the waiver occurs before the trial judge (i.e., the *Faretta*

standard) and a more lenient standard if the waiver occurs before an investigating officer (as in *Montejo*).

That is all well and good. Nonetheless, we are in no position to overrule the United States Supreme Court on a matter of federal constitutional law. Delebreau does not dispute that *Montejo* is controlling. Therefore, the trial court properly denied Delebreau's motion to exclude his statements.

*By the Court.*—Judgment affirmed.