# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1108-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Jesse J. Delebreau, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 352 Wis. 2d 647, 843 N.W.2d 441
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 21

| | |
|---|---|
| OPINION FILED: | June 16, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 5, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | Thomas J. Walsh |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ROGGENSACK, C.J., concurs. (Opinion Filed.) |
| DISSENTED: | ABRAHAMSON, BRADLEY, JJ. dissent. (Opinion Filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Stephen P. Hurley*, *Marcus J. Berghahn*, and *Hurley, Burish & Stanton, S.C.*, Madison, and oral argument by *Stephen P. Hurley*.

For the plaintiff-respondent, the cause was argued by *Jacob J. Wittwer*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

2015 WI 55

No. 2013AP1108-CR
(L.C. No. 2011CF453)

STATE OF WISCONSIN                    :        IN SUPREME COURT

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**State of Wisconsin,**

           **Plaintiff-Respondent,**

      **v.**

**Jesse J. Delebreau,**

           **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 16, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   DAVID T. PROSSER, J.   This is a review of a published decision of the court of appeals, affirming a judgment of conviction in the Brown County Circuit Court, Mark A. Warpinski, Judge.[1]   The case presents questions related to the right to counsel for defendants who have been charged with a crime.

¶2   Jesse J. Delebreau (Delebreau) was convicted of one count of delivering heroin (less than three grams), second or

_____

[1] State v. Delebreau, 2014 WI App 21, 352 Wis. 2d 647, 843 N.W.2d 441.

subsequent offense, as a repeater and as party to a crime.[2] The circuit court entered a judgment of conviction following a jury trial in which the State utilized statements Delebreau made to investigators while he was incarcerated at the Brown County Jail. These statements were made after the charge against Delebreau had been filed and after Delebreau had appeared in court with appointed counsel.

¶3 The focus of Delebreau's appeal is that the statements he made to police after his initial appearance should have been suppressed in accord with State v. Dagnall, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680. In Dagnall, this court observed that the Sixth Amendment right to counsel attaches when criminal charges are filed. Id., ¶52. It then stated that, "[a]fter an attorney represents the defendant on particular charges, the accused may not be questioned about the crimes charged in the absence of an attorney." Id., ¶53.

¶4 Since Dagnall, however, the legal landscape has changed. In 2009 the United States Supreme Court issued its decision in Montejo v. Louisiana, 556 U.S. 778 (2009), holding that a defendant's waiver of his or her Miranda[3] rights is sufficient to waive the Sixth Amendment right to counsel, even though Miranda rights are grounded in the Fifth Amendment. Id.

---

[2] Contrary to Wis. Stat. §§ 961.41(1)(d)1, 961.48(1)(b), 939.62(1)(b), and 939.05. All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

at 786-87. The Court further held that a defendant's waiver need not be presumed invalid simply because the defendant is represented by counsel. Id. at 789. The Court's holding overruled Michigan v. Jackson, 475 U.S. 625 (1986)——on which Dagnall heavily relied——and seriously undercut our holding in Dagnall.

¶5 Following Montejo, we addressed the new legal landscape in State v. Forbush, 2011 WI 25, 332 Wis. 2d 620, 796 N.W.2d 741. However, our decision in Forbush featured such a marked lack of consensus among the justices that it left Wisconsin law somewhat unclear. Hence, we take this opportunity to clarify the law on waiver of the right to counsel after a defendant has been charged with a crime.

¶6 First, we reaffirm the position of a majority of justices in Forbush that Montejo effectively overruled Dagnall by establishing that a waiver of Miranda rights is sufficient to waive the Sixth Amendment right to counsel and that such a waiver is not presumed invalid simply because the defendant is already represented by counsel. Second, we hold that that Article I, Section 7 of the Wisconsin Constitution does not provide greater protections than the Sixth Amendment of the United States Constitution in the context of a waiver of the right to have counsel present during questioning. Accordingly, we affirm the decision of the court of appeals.

I. FACTUAL AND PROCEDURAL HISTORY

¶7 The relevant facts are undisputed. This case stems from the Brown County Drug Task Force's (the Task Force) use of

3

a confidential informant to arrange for the purchase of drugs. In exchange for not being charged with possession of drug paraphernalia, B.J. (the informant) agreed to act as a confidential informant for the Task Force.  On February 21, 2011, the informant arranged a meeting with Christopher Woodliff (Woodliff) to buy crack cocaine and heroin.  The informant knew Woodliff through prior drug deals between the two.  The Task Force outfitted the informant with a surveillance wire and gave him $200 to purchase drugs from Woodliff.

¶8    Once inside Woodliff's home, the informant saw Woodliff, two other men, and a woman.  The informant had not met Delebreau before, but he identified him at trial as one of the other men he saw inside Woodliff's home.  The informant asked Woodliff for two bags of crack cocaine and two bags of heroin. He gave Woodliff the $200 provided by the Task Force.  Woodliff returned $80, then asked Delebreau if he had "any bindles left." Delebreau replied that he did, and the informant gave him the remaining $80.

¶9    After the exchange of money, Woodliff and Delebreau left the room.  When they returned, Delebreau handed the informant two baggies of what the informant believed to be heroin.  Woodliff provided the informant with the crack cocaine. The informant stayed inside Woodliff's home for about 45 minutes.

¶10 Once he left Woodliff's home, the informant met with one of the investigators from the Task Force and turned over the recording equipment along with the four baggies of drugs.  The

4

two baggies of heroin were later weighed at the State Crime Laboratory and found to have a combined weight of 0.013 grams.

¶11   Delebreau was taken into custody on March 31 on a probation hold.   He was held at the Brown County Jail.   Sometime between April 7 and April 9, Delebreau sent a note to jail officials requesting to speak with a narcotics investigator in the Task Force about his involvement.

¶12   On April 14, Delebreau was charged with the delivery of heroin stemming from the February 21 transaction.   That same day, Delebreau made his initial appearance in court[4] where he was represented by Attorney William M. Fitzgerald, a public defender.[5]

¶13   The next day, April 15, Delebreau met with investigator Roman Aronstein from the Task Force at the jail. Aronstein later testified that he was the person who previously referred charges related to Delebreau's involvement in the February 21 incident to the District Attorney's office but that he was unaware of the status of those charges.   Aronstein also testified that at the time of the meeting he believed that Delebreau was at the jail on a probation hold.   Aronstein did not check with the District Attorney's office about his criminal referral and he did not ask Delebreau whether he had actually

---

[4] Court Commissioner Lawrence L. Gazeley presided.

[5] Shortly after Delebreau's initial appearance, it was found that Fitzgerald had a conflict of interest because he represented a co-defendant.   A new attorney was appointed to represent Delebreau.

been charged.    Before beginning the interview, Aronstein activated the audio/video equipment at the jail and read Delebreau his Miranda rights.    Delebreau waived his rights and did not ask for counsel.    In this interview, Delebreau admitted to having sold drugs.[6]    However, Delebreau could not remember anything about the February incident even after being shown video of the transaction.

¶14 Aronstein returned three days later (April 18) to interview Delebreau a second time.    Again, Aronstein did not check whether charges had been filed against Delebreau or whether he had counsel.    Before the interview took place, Aronstein turned on the audio/video equipment and read Delebreau his Miranda rights.    Aronstein testified that Delebreau stated during the interview that "he wasn't going to be able to beat these charges" and that "he was going to end up going to prison anyway so he might as well just cooperate with law enforcement."    Aronstein testified that he believed from this exchange that Delebreau had no intention of meeting with an attorney.    Aronstein had prepared a statement for Delebreau, which Delebreau signed.    The statement acknowledged that Delebreau was the person in the video and based on the transaction shown, he must have been the one who sold heroin to the informant.    However, Delebreau claimed he had no memory of the incident.

---

[6] Aronstein started the meeting by introducing himself and Delebreau immediately said "he wished to resolve the matter at hand and [knew] that he [was] guilty of something."

¶15 The two interviews were used as evidence in Delebreau's trial. Before the trial, Brown County Circuit Judge Mark A. Warpinski denied Delebreau's motion to suppress the statements he made in the interviews. The court of appeals denied Delebreau's petition for leave to appeal the order denying the suppression motion because Delebreau failed to meet the criteria for an interlocutory appeal.

¶16 At trial, a jury found Delebreau guilty of delivery of heroin, and the court sentenced him to eight years of imprisonment consisting of four years of initial confinement and four years of extended supervision. The court of appeals affirmed Delebreau's conviction and the denial of his suppression motion, determining that Montejo controlled and that Delebreau's Miranda waiver was thus sufficient to waive his right to counsel. State v. Delebreau, 2014 WI App 21, 352 Wis. 2d 647, ¶19, 843 N.W.2d 441.

¶17 Delebreau petitioned this court for review, which we granted on May 22, 2014.

## II. STANDARD OF REVIEW

¶18 Whether Delebreau's right to counsel was violated is a question of constitutional fact. When reviewing issues of constitutional fact, we undertake a two-step analysis. State v. Martwick, 2000 WI 5, ¶17, 231 Wis. 2d 801, 604 N.W.2d 552. First, we accept the circuit court's findings of evidentiary or historical fact in a suppression matter unless they are clearly erroneous. Id., ¶18. Second, we independently review the

application of constitutional principles to the facts.  Id., ¶17.

### III. LEGAL BACKGROUND

¶19  We begin our analysis with a discussion of the legal background surrounding the Sixth Amendment right to counsel.[7]

¶20  On April 1, 1986, the United States Supreme Court issued its decision in Jackson.  Jackson had been convicted of second-degree murder based, in part, on a statement he made to police following his request at arraignment that counsel be appointed for him.  Jackson, 475 U.S. at 628.  Police had gone to see Jackson after the arraignment, read Jackson his Miranda rights, and upon waiver, elicited a statement from Jackson.  Id.

¶21  The Court, in an opinion by Justice Stevens, held that the statement should have been suppressed.  Id. at 628-29.  It relied heavily on Edwards v. Arizona, 451 U.S. 477 (1981), which held that "an accused person in custody who has 'expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'"  Jackson, 475 U.S. at 626 (quoting Edwards, 451 U.S. at 484-85).  The Court reasoned that, although Edwards was a Fifth Amendment case, its extension to

---

[7] The Sixth Amendment to the United States Constitution states, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend. VI.

cover the Sixth Amendment was appropriate because "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." Id. at 631.

¶22 The Jackson decision was not unanimous. Chief Justice Burger concurred in the judgment on the basis of stare decisis, but asserted that "plainly the subject calls for reexamination." Jackson, 475 U.S. at 636-37 (Burger, C.J., concurring). Justice Rehnquist, joined by two justices, vigorously dissented, contending that Edwards created a prophylactic rule to protect a defendant's Fifth Amendment privilege against compelled self-incrimination——not a rule to bar a defendant's waiver of his Miranda rights merely because the defendant had requested the appointment of counsel. Jackson, 475 U.S. at 637-39 (Rehnquist, J., dissenting).

¶23 In 2000 this court followed the Jackson majority in Dagnall. Dagnall was charged with first-degree intentional homicide in Wisconsin and was arrested for that charge on a warrant in Florida. Dagnall, 236 Wis. 2d 339, ¶5. On the day of his arrest, a Wisconsin attorney delivered a letter to the authorities in Dane County stating that he represented Dagnall and that the sheriff's department was not to interrogate Dagnall about the homicide. Id., ¶6. Two officers, at least one of whom was aware of the attorney's letter, traveled to Florida to speak with Dagnall and return him to Wisconsin. Id., ¶7.

9

¶24 During their first interview, Dagnall told the officers, "My lawyer told me that I shouldn't talk to you guys." Id., ¶9. The officers read Dagnall his Miranda rights and Dagnall agreed to talk up to the point he thought he might incriminate himself. Id., ¶¶10-11. The following day the officers conducted a second interview after they read Dagnall his Miranda rights and Dagnall agreed to waive them. Id., ¶12. One of the officers, Detective Kevin Hughes, talked to Dagnall two more times after returning him to Wisconsin. Id., ¶13-14. The last time, Dagnall asked if his attorney knew he was back in Wisconsin; the detective said he didn't know and ended the interrogation. Id.

¶25 We held that Dagnall did not need to invoke his right to counsel because he was formally charged with a crime and represented by counsel. Id., ¶4. The officers knew Dagnall was represented by counsel and therefore did not have the authority to question Dagnall about the crime. Id., ¶¶62, 64. We also held that the Sixth Amendment right to counsel attaches at the initiation of charges, and that the accused invokes the Sixth Amendment right to counsel either by retaining counsel or by having counsel appointed. Id., ¶¶52, 60. We explained that authorities may not "knowingly exploit the opportunity to confront the accused without accused's counsel being present." Id., ¶51 (citing Maine v. Moulton, 474 U.S. 159, 176 (1985)).

¶26 As in the Supreme Court, there was a vigorous dissent. Justice Crooks argued against a total prohibition on interrogations after a defendant is formally charged and

10

represented by counsel. Dagnall, 236 Wis. 2d 339, ¶68 (Crooks, J., dissenting).

> Such a bright line rule means that law enforcement officials may not even question a person . . . once charges are filed and the person has an attorney. According to the majority, it makes no difference that such an individual is given Miranda warnings, waives his or her Fifth and Sixth Amendment rights, and agrees to talk to police officers about the crime charged.

Id., ¶69.

¶27 Nine years after Dagnall, the United States Supreme Court reversed course in Montejo. Montejo was arrested in connection with a robbery and murder. He waived his Miranda rights, and after police interrogated him for two days, he confessed to the murder. Montejo, 556 U.S. at 781. Later, Montejo was brought before a judge for Louisiana's equivalent of a preliminary hearing. He was charged with the crime, and the court ordered appointment of counsel. Id.

¶28 Following the hearing, two police detectives visited Montejo and asked him to take them to where he had disposed of the murder weapon. Id. at 781-82. The detectives read Montejo his Miranda rights and he agreed to go on the trip. Id. at 782. During the trip, Montejo penned a letter of apology to the victim's widow. Id. After the trip, Montejo met with his attorney for the first time. Id. The letter he had written was admitted into evidence at trial, and Montejo was convicted. Id.

¶29 In reviewing the case, the Court overruled Jackson and its presumption that waivers of the right to counsel are invalid

11

when given after defendants assert their right to counsel.  The Court also clarified that all defendants have the right to counsel during critical stages of the criminal process, including interrogations, so that a valid waiver of Sixth Amendment rights must be knowing, intelligent, and voluntary. Id. at 786.    However, the Court held that a represented defendant may waive the Sixth Amendment right to counsel after receiving proper Miranda warnings without consulting counsel. Id.

¶30  We addressed this development in Forbush in 2011.  The State charged Forbush with second-degree sexual assault and false imprisonment.  Forbush, 332 Wis. 2d 620, ¶3.  Forbush was arrested in Michigan and made a court appearance there in which he was represented by his brother, a lawyer.  Id., ¶6.  He was subsequently returned to Wisconsin where the Sheboygan County District Attorney's office and a detective with Sheboygan County Sheriff's Department had been notified that Forbush was represented by counsel.  Id., ¶3.

¶31  Before his first court appearance in Sheboygan County, Forbush was approached by a different Sheboygan County detective.  The detective began by reading the Miranda rights to Forbush and then asked whether Forbush would be willing to waive his right to counsel.  Id., ¶4.  Forbush waived his rights and began answering questions.    Immediately following the questioning, Forbush was taken to his initial appearance where he was represented by local counsel as well as his brother. Id., ¶5.

12

¶32 Before trial, Forbush moved to suppress the statements and the circuit court granted the motion. Id., ¶7. The circuit court found that authorities had violated Forbush's Sixth Amendment rights because they knew he was already represented by counsel at the time of questioning. Id.

¶33 The court of appeals reversed,[8] noting that Montejo had overturned Jackson, and "held that the Sixth Amendment does not prevent police from questioning charged and represented defendants." Id., ¶8. The court of appeals determined that the circuit court based its decision on Dagnall, which was effectively overruled by Montejo. Id.

¶34 We reversed the court of appeals in a case that produced five separate opinions. The lead opinion, authored by Justice Roggensack, narrowly interpreted Montejo as removing the presumption of a Sixth Amendment violation for represented defendants in cases where it is unclear whether they invoked their right to counsel. Id., ¶51. Chief Justice Abrahamson, joined by Justice Bradley, conceded that Montejo superseded the state's previous interpretation of the Sixth Amendment right to counsel in Dagnall. Forbush, 332 Wis. 2d 620, ¶64 (Abrahamson, C.J., concurring). However, the Chief Justice contended that the right to counsel under the Wisconsin Constitution is more robust than the right under the Sixth Amendment of the U.S. Constitution. Id., ¶71.

---

[8] State v. Forbush, 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476.

13

¶35 A third opinion noted that Montejo was not in effect at the time of Forbush's interrogation by the Sheboygan detective. Id., ¶103 (Prosser, J., concurring). Thus, Dagnall constituted the law of Wisconsin for law enforcement at that time. Id., ¶88. Under Dagnall, Forbush would not need to re-invoke his Sixth Amendment right because he was already represented by counsel. Id., ¶92. However, the third opinion observed that Montejo "is unquestionably the current controlling law on the subject of the Sixth Amendment right to counsel." Id., ¶116.

¶36 In dissent, Justice Crooks, joined by Justices Ziegler and Gableman, contended that Montejo overruled Dagnall and that a defendant's knowing, intelligent and voluntary waiver of the right to counsel could be achieved through the Miranda warnings. Id., ¶¶152-53 (Crooks, J., dissenting). In a separate dissent, Justice Ziegler, joined by Justice Gableman, reasoned that even though Dagnall articulated a sound, fair, and workable standard, Montejo overruled Dagnall because Dagnall was grounded in the Sixth Amendment of the U.S. Constitution, not Article I, Section 7 of the Wisconsin Constitution. Id., ¶157 (Ziegler, J., dissenting).

¶37 The common thread throughout this evolution of Sixth Amendment case law is the need to balance police flexibility in investigating criminal activity with the fundamentally fair treatment of criminal defendants. Cases like Jackson and Dagnall noted the special role of counsel after a suspect has been charged and formally become a criminal defendant. E.g.,

14

<u>Jackson</u>, 475 U.S. at 632 (acknowledging criminal defendants' "right to rely on counsel as a 'medium' between [them] and the State" after they are charged) (citation omitted); <u>Dagnall</u>, 236 Wis. 2d 339, ¶36.   These cases equated the request for or appointment of counsel as the equivalent of a defendant's invocation of the right to counsel.

¶38 Contrary holdings have not been grounded in the idea that the role of counsel after the initiation of charges is somehow not important or even critical.   Rather, the concerns were more practical and recognized a defendant's authority to knowingly, intelligently, and voluntarily waive his rights.   For example, one dissent in <u>Dagnall</u> offered the hypothetical of a criminal defendant who "is given <u>Miranda</u> warnings, waives his or her Fifth and Sixth Amendment rights, and agrees to talk to police officers about the crime charged."   <u>Dagnall</u>, 236 Wis. 2d 339, ¶69 (Crooks, J., dissenting).   A bright line rule prohibits the officers from speaking with such a defendant, thus frustrating their investigatory role, <u>even though the defendant willingly consents to talk</u>.[9]

---

[9] As Chief Justice Burger put it:

> The urge for "bright-line" rules readily applicable to a host of varying situations would likely relieve this Court somewhat from more than a doubling of the Court's work in recent decades, but this urge seems to be leading the Court to an absolutist, mechanical treatment of the subject.   At times, it seems, the judicial mind is in conflict with what behavioral——and theological——specialists have long recognized as a natural human urge of people to confess wrongdoing.

(continued)

15

¶39 Practical concerns also underpinned the Court's decision in Montejo. There, the Court observed that a vast number of criminal defendants are indigent, and different states treat counsel appointments for indigent defendants in different ways. Montejo, 556 U.S. at 784-85. Some states automatically appoint counsel for indigent defendants, while others require indigent defendants to request counsel. Id. This difference in practice makes a bright line rule unworkable, in part because "[p]olice who did not attend the [preliminary] hearing would have no way to know whether they could approach a particular defendant; and for a court to adjudicate that question ex post would be a fact-intensive and burdensome task, even if monitoring were possible and transcription available." Id. at 785.

¶40 Keeping in mind that courts——including this court—— have sought to strike a balance between these considerations, we turn to the current state of the law.

IV. DISCUSSION

A. Sixth Amendment Right to Counsel

¶41 We first examine whether Delebreau's waiver of his Miranda rights was sufficient to waive his Sixth Amendment right to counsel, as well as whether we should presume that his waiver was invalid because he was represented by counsel. This requires us to determine what law controls.

---

Michigan v. Jackson, 475 U.S. 625, 636-37 (1986) (Burger, C.J., concurring).

¶42 Our holding in Dagnall was grounded in the Sixth Amendment; the only issue we considered was "whether Dagnall properly invoked the Sixth Amendment right to counsel." Dagnall, 236 Wis. 2d 339, ¶3 (emphasis added). Accordingly, our analysis relied extensively on United States Supreme Court case law.[10] We did not discuss the Wisconsin Constitution.

¶43 The United States Supreme Court, however, has final authority over questions of federal constitutional law. Its interpretation of the Sixth Amendment supersedes our own.[11] The question is therefore whether the Court superseded our holding in Dagnall with its decision in Montejo and effectively overruled the Dagnall decision.

¶44 The answer, quite simply, is "yes."

¶45 Montejo was decided on May 26, 2009. The published decision of the court of appeals in State v. Forbush, 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476, was released on December 29, 2009, and it said that Montejo had overruled Dagnall, and that Forbush's waiver of his right to counsel was therefore valid. This court's decision in Forbush did not come

---

[10] E.g., McNeil v. Wisconsin, 501 U.S. 171 (1991); Patterson v. Illinois, 487 U.S. 285 (1988); Jackson, 475 U.S. 625; Maine v. Moulton, 474 U.S. 159 (1985); Edwards v. Arizona, 451 U.S. 477 (1981); Kirby v. Illinois, 406 U.S. 682 (1972).

[11] "[T]he Supremacy Clause of the United States Constitution compels adherence to United States Supreme Court precedent on matters of federal law . . . ." State v. Jennings, 2002 WI 44, ¶3, 252 Wis. 2d 228, 647 N.W.2d 142.

17

until <u>after</u> the relevant questioning in this case.[12] Thus, our decision in <u>Forbush</u> did not control the operative facts here. In any event, a careful reading of the court's five opinions in <u>Forbush</u> would have provided very little encouragement to Delebreau.

¶46 In <u>Forbush</u>, every member of this court agreed that <u>Montejo</u> had an effect on <u>Dagnall</u>. Five concluded that <u>Montejo</u> effectively overruled <u>Dagnall</u>. <u>See</u> <u>Forbush</u>, 332 Wis. 2d 620, ¶¶64, 81 (Abrahamson, C.J., concurring); <u>Id.</u>, ¶¶137, 155 (Crooks, J., dissenting). One stated that the decision in <u>Montejo</u> "undercut many of the major underpinnings of <u>Dagnall</u> . . . ." <u>Id.</u>, ¶96 (Prosser, J., concurring). Finally, the lead opinion "agree[d] with the State that <u>Montejo</u> did modify <u>Dagnall</u> such that there is no presumption of a Sixth Amendment violation due to police interrogation of a represented defendant when the 'certain circumstances' of defendant match those of defendant-Montejo." <u>Id.</u>, ¶51 (lead opinion).

¶47 The upshot of <u>Forbush</u> was that "<u>Montejo</u> is unquestionably the current controlling law on the subject of the Sixth Amendment right to counsel." <u>Id.</u>, ¶116 (Prosser, J., concurring).

¶48 The Supreme Court's holding in <u>Montejo</u> is clear that a defendant is sufficiently apprised of his or her Sixth Amendment

---

[12] Our decision in <u>Forbush</u> was released on April 29, 2011. <u>State v. Forbush</u>, 2011 WI 25, 332 Wis. 2d 620, 769 N.W.2d 741. The relevant questioning in this case took place on April 15 and April 18, 2011.

18

right to counsel by the <u>Miranda</u> warnings, and that a valid <u>Miranda</u> waiver effectively waives the Sixth Amendment right to counsel as well as the Fifth Amendment right to counsel. <u>Montejo</u>, 556 U.S. at 786-87. Defendants are not entitled to a presumption that their waiver of the presence of counsel is invalid, even if they are already represented by counsel. <u>Id.</u> at 789-90.

¶49 Given the above, the first of Delebreau's arguments——that his Sixth Amendment right to counsel was violated——is easily resolved. Delebreau makes no attempt to argue that his <u>Miranda</u> waiver was invalid. Rather, he argues that the <u>Miranda</u> waiver was insufficient to waive his Sixth Amendment right to counsel. The United States Supreme Court disagrees. Therefore, we hold that Delebreau's Sixth Amendment right to counsel was not violated.[13]

### B. Wisconsin Constitution

¶50 Our inquiry does not end with the Sixth Amendment. Delebreau also argues that his questioning violated his right to counsel under Article I, Section 7 of the Wisconsin

---

[13] Delebreau also contends that his appearance in court with an attorney was sufficient to invoke his right to counsel, such that police could not even approach him and request that he waive his right. However, he later concedes that "the rule adopted by [<u>Montejo v. Louisiana</u>, 556 U.S. 778 (2009)] allows police to interrogate a defendant after he has appeared in court with counsel and requires the defendant to assert his right to counsel in every contact with police." Therefore, it is of no consequence that Delebreau's request to speak with police came before his appearance in court with an attorney and that police questioned him after that appearance.

Constitution.    To determine if he is correct, we first ask whether the Wisconsin Constitution provides the same post-charge right-to-counsel protections as the Sixth Amendment.    If our constitution provides greater protections than the Sixth Amendment, we would be confronted with whether Delebreau's statements should have been suppressed under Article I, Section 7.

¶51 It is well understood that a state's constitution may provide criminal defendants with rights beyond those afforded by the United States Constitution.    However, as a general rule, we have expanded the Wisconsin Constitution's protections beyond the scope of the federal constitution "only in cases where either the state constitution or 'the laws of this state require that greater protection of the citizens' liberties . . . be afforded.'"    State v. Agnello, 226 Wis. 2d 164, 180, 593 N.W.2d 427 (1999) (quoting State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977)).    "Where . . . the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution."    Id. at 180-81 (citing State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988)).

¶52 Article I, Section 7 of the Wisconsin Constitution provides, "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."    Its

20

federal analogue in the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."   We see no discernible difference between these two provisions as they relate to the right to counsel.   Nothing suggests that "the right to be heard by . . . counsel" should be any more expansive than "the right . . . to have the assistance of counsel . . . ."

¶53  Delebreau holds up State v. Bevel, 745 S.E.2d 237 (W. Va. 2013), and State v. Lawson, 297 P.3d 1164 (Kan. 2013), as possible avenues for finding greater rights under the Wisconsin Constitution.   In Lawson, the Supreme Court of Kansas held that a Kansas statute provided greater protections than the Sixth Amendment.   Id. at 1173-74.   Wisconsin does not have a similar statute, so Lawson does not advance Delebreau's argument.   In Bevel, the West Virginia Supreme Court of Appeals held that West Virginia's own constitution provided greater protections than those afforded by the Sixth Amendment under Montejo despite a history of interpreting the right under the West Virginia Constitution as consistent with the right under the Sixth Amendment.   Bevel, 745 S.E.2d at 247.   While this is similar to the situation in Wisconsin, the holding in West Virginia is inconsistent with our precedent regarding constitutional interpretation.   In any event, the question is not whether a state may offer greater protections than those in Montejo but whether Wisconsin does.

¶54 As the State notes, the various opinions in Forbush indicate that a majority of the court held that the Wisconsin

21

Constitution and the United States Constitution provide the same protections in this context. We need not dissect the opinions in Forbush to say that that holding is consistent with precedent.

¶55 In State v. Klessig, we said:

> A criminal defendant in Wisconsin is guaranteed this fundamental right to the assistance of counsel for his defense by both Article I, § 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution . . . . The scope, extent, and, thus, interpretation of the right to the assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution.

State v. Klessig, 211 Wis. 2d 194, 201-03, 465 N.W.2d 716 (1997) (footnotes omitted) (citations omitted). See also State v. Sanchez, 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996) ("The language of the Wisconsin provision, on its face, does not appear to differ so substantially from the federal Constitution's guarantee of the right to counsel so as to create a different right.").

¶56 Delebreau touts the importance of the right to counsel, but does not explain how the United States Supreme Court's interpretation of the right under the Sixth Amendment fails to protect it. We see no reason to deviate from our prior practice of interpreting the Wisconsin Constitution's right to counsel as coextensive with the right under the federal constitution.

¶57 Accordingly, because we hold that Delebreau's right to counsel was not violated under the Sixth Amendment, we also hold

22

that his right to counsel was not violated under Article I, Section 7 of the Wisconsin Constitution.

### C. Other Considerations

¶58 Before concluding, we pause briefly to note that today's ruling should not be viewed as a sea change in the law. As the United States Supreme Court explained, the Jackson rule (and consequently, our rule in Dagnall) was a fourth layer of prophylaxis deemed unnecessary by the Supreme Court because of other protections——undisturbed by Montejo——already in place. See Montejo, 556 U.S. at 793-95. "Under the Miranda-Edwards-Minnick line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings."[14]  Id. at 794.

¶59 Police still may not badger defendants into waiving their right to counsel. See Patterson v. Illinois, 487 U.S. 285, 292 n.4 (1988). Police still must cease questioning of criminal defendants when these defendants invoke their right to counsel. See Edwards, 451 U.S. at 484. After a defendant invokes the right to counsel, police still may not resume questioning until counsel is present or 14 days have passed. See Maryland v. Shatzer, 559 U.S. 98, 110 (2010); Minnick v. Mississippi, 498 U.S. 146, 153 (1990).

---

[14] Minnick v. Mississippi, 498 U.S. 146 (1990).

¶60 Our holding merely clarifies that a valid Miranda waiver is sufficient for a criminal defendant to waive the right to have counsel present during questioning, and that courts need not presume any waiver is involuntary simply because the defendant is already represented by counsel.

## V. CONCLUSION

¶61 First, we reaffirm the position of a majority of justices in Forbush that Montejo effectively overruled Dagnall in establishing that a waiver of Miranda rights is sufficient to waive the Sixth Amendment right to counsel, and that such a waiver is not presumed invalid merely because the defendant is already represented by counsel. Second, we hold that Article I, Section 7 of the Wisconsin Constitution does not provide greater protections than the Sixth Amendment of the United States Constitution in the context of a waiver of the right to have counsel present during questioning. Accordingly, we affirm the decision of the court of appeals.

¶62 *By the Court.*—The decision of the court of appeals is affirmed.

24

¶63 PATIENCE DRAKE ROGGENSACK, C.J. *(concurring).* I write in concurrence because I conclude that Jesse Delebreau's constitutional right to counsel was not violated by Detective Roman Aronstein's interviews on April 15 and 18 because Delebreau initiated contact with law enforcement and was given Miranda[1] warnings before each interview. In addition, I agree that the right to counsel under Article I, Section 7 of the Wisconsin Constitution provides the same protections as does the right to counsel under the Sixth Amendment of the United States Constitution.[2] State v. Forbush, 2011 WI 25, ¶15, 332 Wis. 2d 620, 796 N.W.2d 741; State v. Sanchez, 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996).

¶64 I write separately because I conclude that the majority opinion overstates the United States Supreme Court's holdings in Montejo v. Louisiana, 556 U.S. 778 (2009). Montejo directs that a defendant who has been charged with a crime must take affirmative action in order to invoke his or her Sixth Amendment right to counsel, and that without an invocation by the defendant, no violation of a defendant's constitutional right to counsel occurs when a defendant is questioned. Id. at 797.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Because I write in concurrence and because this is not a new conclusion, I do not further detail that the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution provide the same protections to a defendant who has been charged with criminal conduct.

1

I. BACKGROUND

¶65 On March 31, 2011, Jesse Delebreau was taken into custody on a probation hold. Shortly thereafter, he gave a jail employee a written request to speak with a drug enforcement officer.

¶66 On April 14, Delebreau was charged with a sale of heroin; he appeared via video-conferencing from the jail on that charge. Attorney William Fitzgerald, of the State Public Defenders Office, also appeared. However, Attorney Fitzgerald was uncertain whether he could represent Delebreau due to a potential conflict of interest.

¶67 On April 15, Detective Aronstein, a member of the Drug Task Force, met with Delebreau in response to Delebreau's written request. Aronstein met with Delebreau again on April 18. Aronstein gave Delebreau Miranda warnings before the start of each interview. In response to those warnings, Delebreau affirmatively waived his right to counsel.

¶68 Delebreau made incriminating statements during both interviews. He also signed a written statement admitting that he sold heroin, based on his self-identification as a participant in a video of the drug sale.

¶69 On April 27, a rescheduled initial appearance was held. Delebreau and Attorney Peter Kraft appeared in court, whereupon the court noted, "He's making an appearance for the first time with the attorney that will be representing him as

2

this case goes forward."[3] However, again, the record does not establish whether Delebreau took any affirmative steps that caused Attorney Kraft or any other attorney to appear on his behalf on the pending drug charges.

¶70 Prior to trial, Delebreau moved to suppress his statements, claiming Aronstein's interviews violated his Sixth Amendment right to counsel. At the hearing on Delebreau's motion, Attorney Fitzgerald testified that as an attorney for the Public Defenders Office, he would have received notice when "probation and parole indicates that they're going to commence revocation proceedings, and a person from our office goes there to see if those people want to be interviewed for eligibility determination." At this point Attorney Wendy Lemkuil of the Brown County District Attorney's Office interrupted Attorney Leonard Kachinsky's questioning of Attorney Fitzgerald to offer a stipulation.

¶71 After accepting the proposed stipulation that established April 14 as the date on which formal charges were filed, Attorney Kachinsky said, "Perhaps there [are] a few more questions as to Mr. Delebreau actually requesting counsel I need to ask." Attorney Kachinsky then asked, "When you interviewed Mr. Delebreau, do the records of your office indicate whether or not he requested the services of the State Public Defender to represent him on criminal charges?" Attorney Lemkuil objected

---

[3] The record reflects that on May 5, 2011, Delebreau and Attorney Genelle Johnson appeared. A waiver of the preliminary hearing was made and accepted.

on relevancy grounds, to which objection Attorney Kachinsky explained, "I think the issue is whether or not he requested counsel as opposed to the State Public Defender just jumping in." Attorney Kachinsky accurately perceived the Montejo issue.

¶72 Unfortunately, Attorney Kachinsky's question was never answered and consequently, the record does not conclusively establish whether Delebreau took affirmative action to invoke his right to counsel and the date or dates on which any such action may have taken place.

¶73 The circuit court denied the motion to suppress. Delebreau was convicted by a jury that was presented with his statements to Aronstein.

## II. DISCUSSION

### A. Standard of Review

¶74 Whether a defendant who has been charged with a crime has invoked his or her right to counsel is a two-part question. Forbush, 332 Wis. 2d 620, ¶10. "We uphold the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous." Id. In addition, we independently review the application of constitutional principles to facts found. Id.

¶75 Whether a defendant has waived his Sixth Amendment right to counsel by initiating contact with law enforcement is also a question of law for our independent review. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).

4

### B. Right to Counsel

#### 1. General principles

¶76 A defendant's Sixth Amendment right to counsel arises when he or she is charged with a crime. Patterson v. Illinois, 487 U.S. 285, 290 (1988) (explaining that "[t]here can be no doubt that petitioner had the right to have the assistance of counsel at his postindictment interviews with law enforcement"). Under United States Supreme Court precedent, once charges are filed, the "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Montejo, 556 U.S. at 786.

¶77 However, the Sixth Amendment right must be invoked before its protections will be afforded. Id. at 789 (reasoning that "a defendant who never asked for counsel has not yet made up his mind in the first instance"). Once a defendant affirmatively invokes his right to counsel, law enforcement cannot badger him into waiving that right. Id. at 794-95 (explaining that a defendant who invokes his right to counsel is protected because "[a]t that point, not only must the immediate contact end, but 'badgering' by later requests is prohibited.").

¶78 The right to counsel under the Sixth Amendment can be waived, just as the Fifth Amendment right can. Id. at 786. Therefore, when a defendant has been given Miranda warnings, which advise as to the right to counsel and the consequences of proceeding in the absence of counsel and the defendant chooses to answer questions, Miranda warnings are sufficient to provide the foundation for waivers of both the Fifth and the Sixth

5

Amendments rights to counsel. Id.; Patterson, 487 U.S. at 296. The right to counsel also can be waived before or after its invocation by a defendant who initiates contact with law enforcement and volunteers a statement. State v. Kramar, 149 Wis. 2d 767, 785-86, 440 N.W.2d 317 (1989).

### 2. Delebreau's rights

¶79 At the time Delebreau spoke to Aronstein, the record does not reflect whether Delebreau had affirmatively invoked his Sixth Amendment right to counsel. Attorney Kachinsky recognized that although the Sixth Amendment right to counsel attaches when criminal charges are filed, Delebreau nevertheless had the obligation to invoke that right before Sixth Amendment protections would be afforded to him. Montejo, 556 U.S. at 797 (concluding that "[i]f Montejo made a clear assertion of the right to counsel when the officers approached him about accompanying them on the excursion for the murder weapon, then no interrogation should have taken place unless Montejo initiated it"). However, Attorney Kachinsky's questioning of Attorney Fitzgerald left in doubt whether Delebreau had invoked his Sixth Amendment right to counsel.

¶80 Here, however, even assuming arguendo that Delebreau did affirmatively invoke his Sixth Amendment right to counsel, Delebreau's statements to law enforcement were initiated by his written request to speak with drug enforcement personnel. Aronstein's interviews with Delebreau on April 15 and April 18 occurred in direct response to Delebreau's written request. Furthermore, prior to each interview, Aronstein read Delebreau

6

<u>Miranda</u> warnings and Delebreau affirmatively chose to proceed. Those warnings were sufficient protection for Delebreau's Sixth Amendment right to counsel. <u>Id.</u> at 786; <u>Patterson</u>, 487 U.S. at 296. Therefore, no constitutional right was violated when Aronstein interviewed Delebreau, and the circuit court did not err in denying Delebreau's suppression motion.

## III. CONCLUSION

¶81 Delebreau's constitutional right to counsel under state and federal constitutional provisions was not violated by Aronstein's interviews because Delebreau initiated contact with law enforcement and he was given <u>Miranda</u> warnings before each interview. Accordingly, I respectfully concur to the majority opinion.

¶82 SHIRLEY S. ABRAHAMSON, J.  *(dissenting).*  On April 14, 2011, the defendant was charged with delivering heroin and made his initial appearance in court, where he was represented by a public defender.  The defendant thereafter made incriminating statements during two custodial interrogations.

¶83 The core issue presented is whether Article I, Section 7 of the Wisconsin Constitution, which affords the defendant the right to counsel, requires suppression of the defendant's incriminating statements.[1]  I conclude that it does.

¶84 The law enforcement agent who interrogated the defendant was apparently unaware that charges had been filed against the defendant and that the defendant was represented by counsel.  The agent did not contact the defendant's attorney and the defendant's attorney was not present for the interrogations. Instead, the agent read the defendant his Miranda rights,[2] which the defendant waived.

¶85 In considering whether the custodial interrogations of the defendant were permissible under the Wisconsin Constitution in light of the defendant's Miranda waiver, and thus whether the defendant's incriminating statements were admissible at trial, I would adhere to this court's reasoning in State v. Dagnall, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680.

---

[1] "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."  Wis. Const. Art. 1, § 7.

[2] See Miranda v. Arizona, 384 U.S. 436 (1966) (holding that before a law enforcement officer can interrogate a person in custody, that person must be informed of specified rights).

1

¶86 <u>Dagnall</u> established that once an accused is formally charged with a crime and is represented by counsel on that charge, the accused need not unambiguously invoke the right to counsel to be protected from police-initiated interrogation.[3] Rather, subsequent police-initiated interrogation is necessarily improper. Any statements made by a defendant during such interrogation must be suppressed.[4] A waiver of the defendant's <u>Miranda</u> rights will not render the interrogation constitutional or the defendant's statements admissible.[5]

¶87 As Justice Ziegler and Justice Gableman have written, <u>Dagnall</u> articulated a "sound, fair, and workable standard."[6]

¶88 Further, the <u>Dagnall</u> rule fits with Wisconsin's long and cherished history of recognizing and protecting an accused's right to an attorney under the Wisconsin Constitution.

¶89 In 1859, just 11 years after Wisconsin achieved statehood, this court declared that an accused has a fundamental right to an attorney under the Wisconsin Constitution.[7] The court reasoned that the right to a full and fair trial afforded by the Wisconsin Constitution is meaningless when the accused

---

[3] <u>State v. Dagnall</u>, 2000 WI 82, ¶61, 236 Wis. 2d 339, 612 N.W.2d 680.

[4] <u>Id.</u>, ¶¶64-66.

[5] <u>Id.</u>, ¶65.

[6] <u>See</u> majority op., ¶36.

[7] <u>Carpenter v. Dane County</u>, 9 Wis. 249 (*274) (1859). <u>See also</u> <u>County of Dane v. Smith</u>, 13 Wis. 654 (*585), 656-57 (*586-88) (1851).

2

cannot obtain counsel.[8]  Accordingly, the court instructed counties to appoint attorneys to represent indigent felons at government expense.[9]

¶90  It was not until 1963, a full 104 years later, that the United States Supreme Court recognized a similar right under the federal constitution.[10]

¶91  Given this history, there can be no question that the state constitutional right to counsel stands apart from, and has meaning independent of, the corollary right under the federal constitution.  The longstanding state constitutional right to counsel must be protected irrespective of the United States Supreme Court's evolving interpretation of the federal constitution.  As explained in State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977), this court "will not be bound by the minimums which are imposed by the Supreme Court of the United

---

[8] Carpenter, 9 Wis. at 251 (*276) ("[W]ould it not be . . . mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial . . . and yet say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real [] value to him[?]").

[9] Carpenter, 9 Wis. at 252 (*277) ("It seems eminently proper and just that the county . . . should pay an attorney for defending a destitute criminal.").

[10] Gideon v. Wainright, 372 U.S. 335, 344 (1963) ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.").  See also State v. Forbush, 2011 WI 25, ¶71, 332 Wis. 2d 620, 796 N.W.2d 741 (Abrahamson, C.J., concurring); State v. Jennings, 2002 WI 44, ¶65, 252 Wis. 2d 228, 647 N.W.2d 142 (Abrahamson, C.J., dissenting).

States if it is the judgment of this court that the Constitution of Wisconsin . . . require[s] that greater protection of citizens' liberties ought to be afforded."

¶92 Thus, although the United States Supreme Court has rejected the Dagnall rule in its interpretation of the federal constitution,[11] this court need not and should not do the same in its interpretation of the state constitution.[12] Unlike the approach taken by the majority opinion today, the Dagnall rule meaningfully protects "an accused's right to counsel in pre-trial interrogation," which is "imperative to protect the trial rights of an accused and to enhance the integrity of the fact-finding process."[13]

¶93 I would adhere to Dagnall and would continue this court's 156-year history of steadfastly protecting defendants' right to counsel under the state constitution.

¶94 For the reasons set forth, I dissent.

¶95 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[11] See Montejo v. Louisiana, 556 U.S. 778 (2009).

[12] See Forbush, 332 Wis. 2d 620, ¶¶66-71 (Abrahamson, C.J., concurring).

[13] Id., ¶78 (Abrahamson, C.J., concurring).

4