DAVID T. PROSSER, J.
¶ 1. This is a review of a published decision of the court of appeals, affirming a judgment of conviction in the Brown County Circuit Court, Mark A. Warpinski, Judge.[1] The case presents questions related to the right to counsel for defendants who have been charged with a crime.
*546 ¶ 2. Jesse J. Delebreau (Delebreau) was convicted of one count of delivering heroin (less than three grams), second or subsequent offense, as a repeater and as party to a crime.[2] The circuit court entered a judgment of conviction following a jury trial in which the State utilized statements Delebreau made to investigators while he was incarcerated at the Brown County Jail. These statements were made after the charge against Delebreau had been filed and after Delebreau had appeared in court with appointed counsel.
¶ 3. The focus of Delebreau's appeal is that the statements he made to police after his initial appearance should have been suppressed in accord with State v. Dagnall, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680. In Dagnall, this court observed that the Sixth Amendment right to counsel attaches when criminal charges are filed. Id,., ¶ 52. It then stated that, "[a]fter an attorney represents the defendant on particular charges, the accused may not be questioned about the crimes charged in the absence of an attorney." Id., I 53.
¶ 4. Since Dagnall, however, the legal landscape has changed. In 2009 the United States Supreme Court issued its decision in Montejo v. Louisiana, 556 U.S. 778 (2009), holding that a defendant's waiver of his or her Miranda[3] rights is sufficient to waive the Sixth Amendment right to counsel, even though Miranda rights are grounded in the Fifth Amendment. Id. at 786-87. The Court further held that a defen *547 dant's waiver need not be presumed invalid simply because the defendant is represented by counsel. Id. at 789. The Court's holding overruled Michigan v. Jackson, 475 U.S. 625 (1986) — on which Dagnall heavily relied — and seriously undercut our holding in Dagnall.
¶ 5. Following Montejo, we addressed the new legal landscape in State v. Forbush, 2011 WI 25, 332 Wis. 2d 620, 796 N.W.2d 741. However, our decision in Forbush featured such a marked lack of consensus among the justices that it left Wisconsin law somewhat unclear. Hence, we take this opportunity to clarify the law on waiver of the right to counsel after a defendant has been charged with a crime.
¶ 6. First, we reaffirm the position of a majority of justices in Forbush that Montejo effectively overruled Dagnall by establishing that a waiver of Miranda rights is sufficient to waive the Sixth Amendment right to counsel and that such a waiver is not presumed invalid simply because the defendant is already represented by counsel. Second, we hold that that Article I, Section 7 of the Wisconsin Constitution does not provide greater protections than the Sixth Amendment of the United States Constitution in the context of a waiver of the right to have counsel present during questioning. Accordingly, we affirm the decision of the court of appeals.
I. FACTUAL AND PROCEDURAL HISTORY
¶ 7. The relevant facts are undisputed. This case stems from the Brown County Drug Task Force's (the Task Force) use of a confidential informant to arrange for the purchase of drugs. In exchange for not being charged with possession of drug paraphernalia, B.J. (the informant) agreed to act as a confidential infor *548 mant for the Task Force. On February 21, 2011, the informant arranged a meeting with Christopher Woodliff (Woodliff) to buy crack cocaine and heroin. The informant knew Woodliff through prior drug deals between the two. The Task Force outfitted the informant with a surveillance wire and gave him $200 to purchase drugs from Woodliff.
¶ 8. Once inside Woodliff s home, the informant saw Woodliff, two other men, and a woman. The informant had not met Delebreau before, but he identified him at trial as one of the other men he saw inside Woodliff s home. The informant asked Woodliff for two bags of crack cocaine and two bags of heroin. He gave Woodliff the $200 provided by the Task Force. Woodliff returned $80, then asked Delebreau if he had "any bindles left." Delebreau replied that he did, and the informant gave him the remaining $80.
¶ 9. After the exchange of money, Woodliff and Delebreau left the room. When they returned, Delebreau handed the informant two baggies of what the informant believed to be heroin. Woodliff provided the informant with the crack cocaine. The informant stayed inside Woodliff s home for about 45 minutes.
¶ 10. Once he left Woodliff s home, the informant met with one of the investigators from the Task Force and turned over the recording equipment along with the four baggies of drugs. The two baggies of heroin were later weighed at the State Crime Laboratory and found to have a combined weight of 0.013 grams.
¶ 11. Delebreau was taken into custody on March 31 on a probation hold. He was held at the Brown County Jail. Sometime between April 7 and April 9, Delebreau sent a note to jail officials requesting to speak with a narcotics investigator in the Task Force about his involvement.
*549 ¶ 12. On April 14, Delebreau was charged with the delivery of heroin stemming from the February 21 transaction. That same day, Delebreau made his initial appearance in court[4] where he was represented by Attorney William M. Fitzgerald, a public defender.[5]
¶ 13. The next day, April 15, Delebreau met with investigator Roman Aronstein from the Task Force at the jail. Aronstein later testified that he was the person who previously referred charges related to Delebreau's involvement in the February 21 incident to the District Attorney's office but that he was unaware of the status of those charges. Aronstein also testified that at the time of the meeting he believed that Delebreau was at the jail on a probation hold. Aronstein did not check with the District Attorney's office about his criminal referral and he did not ask Delebreau whether he had actually been charged. Before beginning the interview, Aronstein activated the audio/video equipment at the jail and read Delebreau his Miranda rights. Delebreau waived his rights and did not ask for counsel. In this interview, Delebreau admitted to having sold drugs.[6] However, Delebreau could not remember anything about the February incident even after being shown video of the transaction.
*550 ¶ 14. Aronstein returned three days later (April 18) to interview Delebreau a second time. Again, Aronstein did not check whether charges had been filed against Delebreau or whether he had counsel. Before the interview took place, Aronstein turned on the audio/video equipment and read Delebreau his Miranda rights. Aronstein testified that Delebreau stated during the interview that "he wasn't going to be able to beat these charges" and that "he was going to end up going to prison anyway so he might as well just cooperate with law enforcement." Aronstein testified that he believed from this exchange that Delebreau had no intention of meeting with an attorney. Aron-stein had prepared a statement for Delebreau, which Delebreau signed. The statement acknowledged that Delebreau was the person in the video and based on the transaction shown, he must have been the one who sold heroin to the informant. However, Delebreau claimed he had no memory of the incident.
¶ 15. The two interviews were used as evidence in Delebreau's trial. Before the trial, Brown County Circuit Judge Mark A. Warpinski denied Delebreau's motion to suppress the statements he made in the interviews. The court of appeals denied Delebreau's petition for leave to appeal the order denying the suppression motion because Delebreau failed to meet the criteria for an interlocutory appeal.
¶ 16. At trial, a jury found Delebreau guilty of delivery of heroin, and the court sentenced him to eight years of imprisonment consisting of four years of initial confinement and four years of extended supervision. The court of appeals affirmed Delebreau's conviction and the denial of his suppression motion, determining that Montejo controlled and that Delebreau's Miranda waiver was thus sufficient to waive *551 his right to counsel. State v. Delebreau, 2014 WI App 21, 352 Wis. 2d 647, ¶ 19, 843 N.W.2d 441.
¶ 17. Delebreau petitioned this court for review, which we granted on May 22, 2014.
II. STANDARD OF REVIEW
¶ 18. Whether Delebreau's right to counsel was violated is a question of constitutional fact. When reviewing issues of constitutional fact, we undertake a two-step analysis. State v. Martwick, 2000 WI 5, ¶ 17, 231 Wis. 2d 801, 604 N.W.2d 552. First, we accept the circuit court's findings of evidentiary or historical fact in a suppression matter unless they are clearly erroneous. Id., ¶ 18. Second, we independently review the application of constitutional principles to the facts. Id., ¶ 17.
III. LEGAL BACKGROUND
¶ 19. We begin our analysis with a discussion of the legal background surrounding the Sixth Amendment right to counsel.[7]
¶ 20. On April 1, 1986, the United States Supreme Court issued its decision in Jackson. Jackson had been convicted of second-degree murder based, in part, on a statement he made to police following his request at arraignment that counsel be appointed for him. Jackson, 475 U.S. at 628. Police had gone to see Jackson after the arraignment, read Jackson his Miranda rights, and upon waiver, elicited a statement from Jackson. Id.
*552 ¶ 21. The Court, in an opinion by Justice Stevens, held that the statement should have been suppressed. Id. at 628-29. It relied heavily on Edwards v. Arizona, 451 U.S. 477 (1981), which held that "an accused person in custody who has 'expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" Jackson, 475 U.S. at 626 (quoting Edwards, 451 U.S. at 484-85). The Court reasoned that, although Edwards was a Fifth Amendment case, its extension to cover the Sixth Amendment was appropriate because "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." Id. at 631.
¶ 22. The Jackson decision was not unanimous. Chief Justice Burger concurred in the judgment on the basis of stare decisis, but asserted that "plainly the subject calls for reexamination." Jackson, 475 U.S. at 636-37 (Burger, C.J., concurring). Justice Rehnquist, joined by two justices, vigorously dissented, contending that Edwards created a prophylactic rule to protect a defendant's Fifth Amendment privilege against compelled self-incrimination — not a rule to bar a defendant's waiver of his Miranda rights merely because the defendant had requested the appointment of counsel. Jackson, 475 U.S. at 637-39 (Rehnquist, J., dissenting).
¶ 23. In 2000 this court followed the Jackson majority in Dagnall. Dagnall was charged with first-degree intentional homicide in Wisconsin and was arrested for that charge on a warrant in Florida. *553 Dagnall, 236 Wis. 2d 339, ¶ 5. On the day of his arrest, a Wisconsin attorney delivered a letter to the authorities in Dane County stating that he represented Dagnall and that the sheriffs department was not to interrogate Dagnall about the homicide. Id., ¶ 6. Two officers, at least one of whom was aware of the attorney's letter, traveled to Florida to speak with Dagnall and return him to Wisconsin. Id., ¶ 7.
¶ 24. During their first interview, Dagnall told the officers, "My lawyer told me that I shouldn't talk to you guys." Id., ¶ 9. The officers read Dagnall his Miranda rights and Dagnall agreed to talk up to the point he thought he might incriminate himself. Id., ¶¶ 10-11. The following day the officers conducted a second interview after they read Dagnall his Miranda rights and Dagnall agreed to waive them. Id., ¶ 12. One of the officers, Detective Kevin Hughes, talked to Dagnall two more times after returning him to Wisconsin. Id., ¶ 13-14. The last time, Dagnall asked if his attorney knew he was back in Wisconsin; the detective said he didn't know and ended the interrogation. Id.
¶ 25. We held that Dagnall did not need to invoke his right to counsel because he was formally charged with a crime and represented by counsel. Id., ¶ 4. The officers knew Dagnall was represented by counsel and therefore did not have the authority to question Dagnall about the crime. Id., ¶¶ 62, 64. We also held that the Sixth Amendment right to counsel attaches at the initiation of charges, and that the accused invokes the Sixth Amendment right to counsel either by retaining counsel or by having counsel appointed. Id., ¶¶ 52, 60. We explained that authorities may not "knowingly exploit the opportunity to confront the accused without *554 accused's counsel being present." Id., ¶ 51 (citing Maine v. Moulton, 474 U.S. 159, 176 (1985)).
f 26. As in the Supreme Court, there was a vigorous dissent. Justice Crooks argued against a total prohibition on interrogations after a defendant is formally charged and represented by counsel. Dagnall, 236 Wis. 2d 339, ¶ 68 (Crooks, J., dissenting).
Such a bright line rule means that law enforcement officials may not even question a person.. . once charges are filed and the person has an attorney. According to the majority, it makes no difference that such an individual is given Miranda warnings, waives his or her Fifth and Sixth Amendment rights, and agrees to talk to police officers about the crime charged.
Id., ¶ 69.
¶ 27. Nine years after Dagnall, the United States Supreme Court reversed course in Montejo. Montejo was arrested in connection with a robbery and murder. He waived his Miranda rights, and after police interrogated him for two days, he confessed to the murder. Montejo, 556 U.S. at 781. Later, Montejo was brought before a judge for Louisiana's equivalent of a preliminary hearing. He was charged with the crime, and the court ordered appointment of counsel. Id.
¶ 28. Following the hearing, two police detectives visited Montejo and asked him to take them to where he had disposed of the murder weapon. Id. at 781-82. The detectives read Montejo his Miranda rights and he agreed to go on the trip. Id. at 782. During the trip, Montejo penned a letter of apology to the victim's widow. Id. After the trip, Montejo met with *555 his attorney for the first time. Id. The letter he had written was admitted into evidence at trial, and Montejo was convicted. Id.
¶ 29. In reviewing the case, the Court overruled Jackson and its presumption that waivers of the right to counsel are invalid when given after defendants assert their right to counsel. The Court also clarified that all defendants have the right to counsel during critical stages of the criminal process, including interrogations, so that a valid waiver of Sixth Amendment rights must be knowing, intelligent, and voluntary. Id. at 786. However, the Court held that a represented defendant may waive the Sixth Amendment right to counsel after receiving proper Miranda warnings without consulting counsel. Id.
¶ 30. We addressed this development in Forbush in 2011. The State charged Forbush with second-degree sexual assault and false imprisonment. Forbush, 332 Wis. 2d 620, ¶ 3. Forbush was arrested in Michigan and made a court appearance there in which he was represented by his brother, a lawyer. Id., ¶ 6. He was subsequently returned to Wisconsin where the Sheboygan County District Attorney's office and a detective with Sheboygan County Sheriffs Department had been notified that Forbush was represented by counsel. Id., ¶ 3.
¶ 31. Before his first court appearance in Sheboygan County, Forbush was approached by a different Sheboygan County detective. The detective began by reading the Miranda rights to Forbush and then asked whether Forbush would be willing to waive his right to counsel. Id., ¶ 4. Forbush waived his rights and began answering questions. Immediately following the ques *556 tioning, Forbush was taken to his initial appearance where he was represented by local counsel as well as his brother. Id., ¶ 5.
¶ 32. Before trial, Forbush moved to suppress the statements and the circuit court granted the motion. Id., ¶ 7. The circuit court found that authorities had violated Forbush's Sixth Amendment rights because they knew he was already represented by counsel at the time of questioning. Id.
¶ 33. The court of appeals reversed,[8] noting that Montejo had overturned Jackson, and "held that the Sixth Amendment does not prevent police from questioning charged and represented defendants." Id., ¶ 8. The court of appeals determined that the circuit court based its decision on Dagnall, which was effectively overruled by Montejo. Id.
¶ 34. We reversed the court of appeals in a case that produced five separate opinions. The lead opinion, authored by Justice Roggensack, narrowly interpreted Montejo as removing the presumption of a Sixth Amendment violation for represented defendants in cases where it is unclear whether they invoked their right to counsel. Id., ¶ 51. Chief Justice Abrahamson, joined by Justice Bradley, conceded that Montejo superseded the state's previous interpretation of the Sixth Amendment right to counsel in Dagnall. Forbush, 332 Wis. 2d 620, ¶ 64 (Abrahamson, C.J., concurring). However, the Chief Justice contended that the right to counsel under the Wisconsin Constitution is more robust than the right under the Sixth Amendment of the U.S. Constitution. Id., ¶ 71.
*557 ¶ 35. A third opinion noted that Montejo was not in effect at the time of Forbush's interrogation by the Sheboygan detective. Id., ¶ 103 (Prosser, J., concurring). Thus, Dagnall constituted the law of Wisconsin for law enforcement at that time. Id., ¶ 88. Under Dagnall, Forbush would not need to re-invoke his Sixth Amendment right because he was already represented by counsel. Id., ¶ 92. However, the third opinion observed that Montejo "is unquestionably the current controlling law on the subject of the Sixth Amendment right to counsel." Id., ¶[ 116.
¶ 36. In dissent, Justice Crooks, joined by Justices Ziegler and Gableman, contended that Montejo overruled Dagnall and that a defendant's knowing, intelligent and voluntary waiver of the right to counsel could be achieved through the Miranda warnings. Id., ¶¶ 152-53 (Crooks, J., dissenting). In a separate dissent, Justice Ziegler, joined by Justice Gableman, reasoned that even though Dagnall articulated a sound, fair, and workable standard, Montejo overruled Dagnall because Dagnall was grounded in the Sixth Amendment of the U.S. Constitution, not Article I, Section 7 of the Wisconsin Constitution. Id., ¶ 157 (Ziegler, J., dissenting).
¶ 37. The common thread throughout this evolution of Sixth Amendment case law is the need to balance police flexibility in investigating criminal activity with the fundamentally fair treatment of criminal defendants. Cases like Jackson and Dagnall noted the special role of counsel after a suspect has been charged and formally become a criminal defendant. E.g., Jackson, 475 U.S. at 632 (acknowledging criminal defendants' "right to rely on counsel as a 'medium' between [them] and the State" after they are charged) (citation omitted); Dagnall, 236 Wis. 2d 339, ¶ 36. *558 These cases equated the request for or appointment of counsel as the equivalent of a defendant's invocation of the right to counsel.
¶ 38. Contrary holdings have not been grounded in the idea that the role of counsel after the initiation of charges is somehow not important or even critical. Rather, the concerns were more practical and recognized a defendant's authority to knowingly, intelligently, and voluntarily waive his rights. For example, one dissent in Dagnall offered the hypothetical of a criminal defendant who "is given Miranda warnings, waives his or her Fifth and Sixth Amendment rights, and agrees to talk to police officers about the crime charged." Dagnall, 236 Wis. 2d 339, ¶ 69 (Crooks, J., dissenting). A bright line rule prohibits the officers from speaking with such a defendant, thus frustrating their investigatory role, even though the defendant willingly consents to talk[9]
¶ 39. Practical concerns also underpinned the Court's decision in Montejo. There, the Court observed that a vast number of criminal defendants are indigent, and different states treat counsel appointments for indigent defendants in different ways. Montejo, 556 U.S. at 784-85. Some states automatically appoint *559 counsel for indigent defendants, while others require indigent defendants to request counsel. Id. This difference in practice makes a bright line rule unworkable, in part because "[p]olice who did not attend the [preliminary] hearing would have no way to know whether they could approach a particular defendant; and for a court to adjudicate that question ex post would be a fact-intensive and burdensome task, even if monitoring were possible and transcription available." Id. at 785.
¶ 40. Keeping in mind that courts — including this court — have sought to strike a balance between these considerations, we turn to the current state of the law.
IV. DISCUSSION
A. Sixth Amendment Right to Counsel
¶ 41. We first examine whether Delebreau's waiver of his Miranda rights was sufficient to waive his Sixth Amendment right to counsel, as well as whether we should presume that his waiver was invalid because he was represented by counsel. This requires us to determine what law controls.
¶ 42. Our holding in Dagnall was grounded in the Sixth Amendment; the only issue we considered was "whether Dagnall properly invoked the Sixth Amendment right to counsel." Dagnall, 236 Wis. 2d 339, ¶ 3 (emphasis added). Accordingly, our analysis relied extensively on United States Supreme Court case law.[10] We did not discuss the Wisconsin Constitution.
*560 ¶ 43. The United States Supreme Court, however, has final authority over questions of federal constitutional law. Its interpretation of the Sixth Amendment supersedes our own.[11] The question is therefore whether the Court superseded our holding in Dagnall with its decision in Montejo and effectively overruled the Dagnall decision.
¶ 44. The answer, quite simply, is "yes."
¶ 45. Montejo was decided on May 26, 2009. The published decision of the court of appeals in State v. Forbush, 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476, was released on December 29, 2009, and it said that Montejo had overruled Dagnall, and that For-bush's waiver of his right to counsel was therefore valid. This court's decision in Forbush did not come until after the relevant questioning in this case.[12] Thus, our decision in Forbush did not control the operative facts here. In any event, a careful reading of the court's five opinions in Forbush would have provided very little encouragement to Delebreau.
¶ 46. In Forbush, every member of this court agreed that Montejo had an effect on Dagnall. Five concluded that Montejo effectively overruled Dagnall. See Forbush, 332 Wis. 2d 620, ¶¶ 64, 81 (Abrahamson, C.J., concurring); Id., ¶¶ 137, 155 (Crooks, J., dissent *561 ing). One stated that the decision in Montejo "undercut many of the major underpinnings oí Dagnall. . . Id., | 96 (Prosser, J., concurring). Finally, the lead opinion "agree[d] with the State that Montejo did modify Dagnall such that there is no presumption of a Sixth Amendment violation due to police interrogation of a represented defendant when the 'certain circumstances' of defendant match those of defendantMontejo." Id., ¶ 51 (lead opinion).
¶ 47. The upshot of Forbush was that "Montejo is unquestionably the current controlling law on the subject of the Sixth Amendment right to counsel." Id., ¶ 116 (Prosser, J., concurring).
¶ 48. The Supreme Court's holding in Montejo is clear that a defendant is sufficiently apprised of his or her Sixth Amendment right to counsel by the Miranda warnings, and that a valid Miranda waiver effectively waives the Sixth Amendment right to counsel as well as the Fifth Amendment right to counsel. Montejo, 556 U.S. at 786-87. Defendants are not entitled to a presumption that their waiver of the presence of counsel is invalid, even if they are already represented by counsel. Id. at 789-90.
¶ 49. Given the above, the first of Delebreau's arguments — that his Sixth Amendment right to counsel was violated — is easily resolved. Delebreau makes no attempt to argue that his Miranda waiver was invalid. Rather, he argues that the Miranda waiver was insufficient to waive his Sixth Amendment right to counsel. The United States Supreme Court disagrees. *562 Therefore, we hold that Delebreau's Sixth Amendment right to counsel was not violated.[13]
B. Wisconsin Constitution
¶ 50. Our inquiry does not end with the Sixth Amendment. Delebreau also argues that his questioning violated his right to counsel under Article I, Section 7 of the Wisconsin Constitution. To determine if he is correct, we first ask whether the Wisconsin Constitution provides the same post-charge right-to-counsel protections as the Sixth Amendment. If our constitution provides greater protections than the Sixth Amendment, we would be confronted with whether Delebreau's statements should have been suppressed under Article I, Section 7.
¶ 51. It is well understood that a state's constitution may provide criminal defendants with rights beyond those afforded by the United States Constitution. However, as a general rule, we have expanded the Wisconsin Constitution's protections beyond the scope of the federal constitution "only in cases where either the state constitution or 'the laws of this state require *563 that greater protection of the citizens' liberties ... be afforded.'" State v. Agnello, 226 Wis. 2d 164, 180, 593 N.W.2d 427 (1999) (quoting State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977)). "Where ... the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution." Id. at 180-81 (citing State v. Tompkins, 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988)).
¶ 52. Article I, Section 7 of the Wisconsin Constitution provides, "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel. ..." Its federal analogue in the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right... to have the assistance of counsel for his defense." We see no discernible difference between these two provisions as they relate to the right to counsel. Nothing suggests that "the right to be heard by. . . counsel" should be any more expansive than "the right... to have the assistance of counsel.. . ."
¶ 53. Delebreau holds up State v. Bevel, 745 S.E.2d 237 (W. Va. 2013), and State v. Lawson, 297 P.3d 1164 (Kan. 2013), as possible avenues for finding greater rights under the Wisconsin Constitution. In Lawson, the Supreme Court of Kansas held that a Kansas statute provided greater protections than the Sixth Amendment. Id. at 1173-74. Wisconsin does not have a similar statute, so Lawson does not advance Delebreau's argument. In Bevel, the West Virginia Supreme Court of Appeals held that West Virginia's own constitution provided greater protections than *564 those afforded by the Sixth Amendment under Montejo despite a history of interpreting the right under the West Virginia Constitution as consistent with the right under the Sixth Amendment. Bevel, 745 S.E.2d at 247. While this is similar to the situation in Wisconsin, the holding in West Virginia is inconsistent with our precedent regarding constitutional interpretation. In any event, the question is not whether a state may offer greater protections than those in Montejo but whether Wisconsin does.
¶ 54. As the State notes, the various opinions in Forbush indicate that a majority of the court held that the Wisconsin Constitution and the United States Constitution provide the same protections in this context. We need not dissect the opinions in Forbush to say that that holding is consistent with precedent.
¶ 55. In State v. Klessig, we said:
A criminal defendant in Wisconsin is guaranteed this fundamental right to the assistance of counsel for his defense by both Article I, § 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution.... The scope, extent, and, thus, interpretation of the right to the assistance of counsel is identical under the Wisconsin Constitution and the United States Constitution.
State v. Klessig, 211 Wis. 2d 194, 201-03, 465 N.W.2d 716 (1997) (footnotes omitted) (citations omitted). See also State v. Sanchez, 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996) ("The language of the Wisconsin provision, on its face, does not appear to differ so substantially from the federal Constitution's guarantee of the right to counsel so as to create a different right.").
¶ 56. Delebreau touts the importance of the right to counsel, but does not explain how the United States Supreme Court's interpretation of the right under the *565 Sixth Amendment fails to protect it. We see no reason to deviate from our prior practice of interpreting the Wisconsin Constitution's right to counsel as coextensive with the right under the federal constitution.
¶ 57. Accordingly, because we hold that Delebreau's right to counsel was not violated under the Sixth Amendment, we also hold that his right to counsel was not violated under Article I, Section 7 of the Wisconsin Constitution.
C. Other Considerations
¶ 58. Before concluding, we pause briefly to note that today's ruling should not be viewed as a sea change in the law. As the United States Supreme Court explained, the Jackson rule (and consequently, our rule in Dagnall) was a fourth layer of prophylaxis deemed unnecessary by the Supreme Court because of other protections — undisturbed by Montejo — already in place. See Montejo, 556 U.S. at 793-95. "Under the Miranda-Edwards-Minnick line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings."[14] Id. at 794.
¶ 59. Police still may not badger defendants into waiving their right to counsel. See Patterson v. Illinois, 487 U.S. 285, 292 n.4 (1988). Police still must cease questioning of criminal defendants when these defendants invoke their right to counsel. See Edwards, 451 U.S. at 484. After a defendant invokes the right to counsel, police still may not resume questioning until *566 counsel is present or 14 days have passed. See Maryland v. Shatzer, 559 U.S. 98, 110 (2010); Minnick v. Mississippi, 498 U.S. 146, 153 (1990).
¶ 60. Our holding merely clarifies that a valid Miranda waiver is sufficient for a criminal defendant to waive the right to have counsel present during questioning, and that courts need not presume any waiver is involuntary simply because the defendant is already represented by counsel.
V. CONCLUSION
¶ 61. First, we reaffirm the position of a majority of justices in Forbush that Montejo effectively overruled Dagnall in establishing that a waiver of Miranda rights is sufficient to waive the Sixth Amendment right to counsel, and that such a waiver is not presumed invalid merely because the defendant is already represented by counsel. Second, we hold that Article I, Section 7 of the Wisconsin Constitution does not provide greater protections than the Sixth Amendment of the United States Constitution in the context of a waiver of the right to have counsel present during questioning. Accordingly, we affirm the decision of the court of appeals.
¶ 62. By the Court. — The decision of the court of appeals is affirmed.

 State v. Delebreau, 2014 WI App 21, 352 Wis. 2d 647, 843 N.W.2d 441.

 Contrary to Wis. Stat. §§ 961.41(l)(d)l, 961.48(l)(b), 939.62(l)(b), and 939.05. All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 Miranda v. Arizona, 384 U.S. 436 (1966).

 Court Commissioner Lawrence L. Gazeley presided.

 Shortly after Delebreau's initial appearance, it was found that Fitzgerald had a conflict of interest because he represented a co-defendant. A new attorney was appointed to represent Delebreau.

 Aronstein started the meeting by introducing himself and Delebreau immediately said "he wished to resolve the matter at hand and [knew] that he [was] guilty of something."

 The Sixth Amendment to the United States Constitution states, in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right... to have the assistance of counsel for his defense." U.S. Const, amend. VI.

 State v. Forbush, 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476.

 As Chief Justice Burger put it:
The urge for "bright-line" rules readily applicable to a host of varying situations would likely relieve this Court somewhat from more than a doubling of the Court's work in recent decades, but this urge seems to be leading the Court to an absolutist, mechanical treatment of the subject. At times, it seems, the judicial mind is in conflict with what behavioral — and theological' — specialists have long recognized as a natural human urge of people to confess wrongdoing.
Michigan v. Jackson, 475 U.S. 625, 636-37 (1986) (Burger, C.J., concurring).

 E.g., McNeil v. Wisconsin, 501 U.S. 171 (1991); Patterson v. Illinois, 487 U.S. 285 (1988); Jackson, 475 U.S. 625; Maine v. *560 Moulton, 474 U.S. 159 (1985); Edwards v. Arizona, 451 U.S. 477 (1981); Kirby v. Illinois, 406 U.S. 682 (1972).

 "[T]he Supremacy Clause of the United States Constitution compels adherence to United States Supreme Court precedent on matters of federal law . ..." State v. Jennings, 2002 WI 44, ¶ 3, 252 Wis. 2d 228, 647 N.W.2d 142.

 Our decision in Forbush was released on April 29, 2011. State v. Forbush, 2011 WI 25, 332 Wis. 2d 620, 769 N.W.2d 741. The relevant questioning in this case took place on April 15 and April 18, 2011.

 Delebreau also contends that his appearance in court with an attorney was sufficient to invoke his right to counsel, such that police could not even approach him and request that he waive his right. However, he later concedes that "the rule adopted by [Montejo v. Louisiana, 556 U.S. 778 (2009)] allows police to interrogate a defendant after he has appeared in court with counsel and requires the defendant to assert his right to counsel in every contact with police." Therefore, it is of no consequence that Delebreau's request to speak with police came before his appearance in court with an attorney and that police questioned him after that appearance.

 Minnick v. Mississippi, 498 U.S. 146 (1990).