COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP758-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF1041

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ANDREW M. OBREGON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Andrew M. Obregon appeals from a judgment of conviction for various offenses, including first-degree intentional homicide, as well as from an order denying his postconviction motion seeking plea withdrawal. Obregon argues that the statements he made during three custodial interviews with police were involuntary. He also argues that his waiver of rights following the administration of *Miranda* warnings[1] was not knowing, intelligent, and voluntary. Finally, he asserts his statements during the second interview were obtained in violation of his Sixth Amendment right to counsel. We reject his arguments and affirm.

## BACKGROUND

¶2 Obregon, a suspect in the murder of Tywon Anderson in Kenosha County, evaded police apprehension for weeks, repeatedly stealing vehicles and leading officers on high-speed chases. On October 13, 2015, Obregon severely beat a resident in the Town of Brighton and stole her vehicle, then fled to Lake County, Illinois, where the vehicle was tracked and disabled by its OnStar system. Obregon fled on foot and was apprehended after he sustained wounds to his right arm from a police gunshot and a police canine bite.

¶3 After receiving treatment at a local hospital for a short time, Obregon was transported to the Zion Police Department in Illinois, where he was interviewed by detectives from the Kenosha County Sheriff's Department. Kenosha County detectives conducted additional interviews at that location on

---

[1] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).*

October 15 and 16, 2015. Prior to each interview, Obregon was given *Miranda* warnings and waived his rights before making statements.

¶4 On November 4, 2015, the State filed a thirty-two-count criminal complaint in the Kenosha County Circuit Court charging Obregon with, among other crimes, first-degree intentional homicide for the shooting death of Anderson. Obregon filed a motion to suppress, asserting that the statements he made during the interviews on October 13, 15, and 16 were involuntary; the waivers he signed after being given *Miranda* warnings on all three dates were invalid; and his statements on October 15 were obtained in violation of his Fifth and Sixth Amendment right to counsel.[2]

¶5 The circuit court held an evidentiary hearing on the motion, at which Kenosha County Sheriff's Department Detective Jeffrey Bliss, who was present for all three interviews in Illinois, testified. The court also reviewed the video of each interview. After articulating its findings of fact (which we discuss in detail below), the court concluded Obregon's statements were made voluntarily; Obregon had knowingly, intelligently, and voluntarily waived his rights following *Miranda* warnings during each interview; and the questioning that occurred on October 15 had not violated Obregon's right to counsel.

¶6 Obregon entered into a plea agreement with the State and pled guilty to six offenses, including first-degree intentional homicide and attempted first-

---

[2] Obregon also asserted that his statement during the October 16 interview—"I'm pissed, and I don't really want to talk now."—constituted an unequivocal and unambiguous invocation of his right to silence that was ignored by police. The circuit court concluded otherwise. Obregon does not renew that argument on appeal, and we therefore do not address it. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

degree intentional homicide.[3] The remaining counts were dismissed and read in. Obregon was sentenced to life imprisonment.

¶7 Obregon subsequently filed a postconviction motion seeking to withdraw his plea, alleging ineffective assistance of counsel based on his trial counsel's failure to request judicial substitution and faulty advice from his trial counsel regarding his eligibility for extended supervision. The circuit court denied the motion.[4] Obregon now appeals the denial of his suppression motion.[5]

## DISCUSSION

¶8 Obregon argues that all of his custodial statements should be suppressed because they were involuntary and obtained without a knowing, intelligent, and voluntary waiver of his rights following administration of the *Miranda* warnings. Additionally, as to his October 15 interview, he argues his statements were obtained in violation of his Sixth Amendment right to counsel.

¶9 "Whether evidence should be suppressed is a question of constitutional fact." *State v. Brooks*, 2020 WI 60, ¶7, 392 Wis. 2d 402, 944 N.W.2d 832 (citation omitted). We review the circuit court's findings of historical fact under the clearly erroneous standard, but the application of constitutional principles to those facts presents a question of law that we review independently.

---

[3] The plea agreement also resolved charges in a separate case, all of which were dismissed and read in.

[4] Although Obregon purports to appeal from the order denying his postconviction motion, he presents no arguments regarding that order. Accordingly, we will not address it further.

[5] *See* WIS. STAT. § 971.31(10) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

*Id.* The clearly erroneous standard applies even when the appellate record includes a video recording. *State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898. Obregon does not argue that any of the circuit court's findings of historical fact were clearly erroneous, and therefore this appeal involves purely questions of law.

## I. *Voluntariness of the Statements*

¶10 Obregon first argues his statements during all three interviews were not voluntarily made. *See State v. Hoppe*, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407 (observing that admission of involuntary statements violates a defendant's due process rights under the state and federal constitutions). Voluntariness is evaluated using the totality of the circumstances surrounding the interrogation by balancing the defendant's personal characteristics against the actions of law enforcement. *State v. Dobbs*, 2020 WI 64, ¶72, 392 Wis. 2d 505, 945 N.W.2d 609. Improperly coercive police practices are a prerequisite to a finding of involuntariness. *Id.*

¶11 We agree with the circuit court that Obregon's statements were made voluntarily. Considering first Obregon's personal characteristics, the court found that Obregon was thirty-two years old and had been administered *Miranda* warnings by police in the past. During those prior police encounters, Obregon had at times exercised his constitutional rights and other times had waived them to give statements. He had a tenth-grade education and could read and write. Obregon did not appear impaired or confused during any of the interviews.

¶12 As to the October 13 interrogation, Obregon argues his statements were involuntary because he had been shot, bitten by a police dog, and had not slept. Obregon likens his situation to that of the defendants in *Brown v.*

*Mississippi*, 297 U.S. 278 (1936), and *State v. Hoyt*, 21 Wis. 2d 284, 128 N.W.2d 645 (1964). The defendants in those cases were, respectively, severely beaten until they signed confessions, *see Brown*, 297 U.S. at 282, or threatened with sleep deprivation unless they confessed, *see Hoyt*, 21 Wis. 2d at 294-95.

¶13   *Brown* and *Hoyt* are not analogous to Obregon's situation. Obregon received medical care for his injuries and was taken to the police station only after he was cleared for release by medical professionals. No questioning occurred for several hours after Obregon arrived at the police station, during which time he was placed in an interview room, provided with food and drink, and was told that he would be given time alone to eat and relax. He requested to be released from handcuffs and was. Additionally, police responded adequately to Obregon's requests for a blanket and for something to rest his wounded arm on. Just before the questioning began, he used the bathroom and he asked for and was provided with Tylenol. Obregon appears to have slept at various times between the time he was provided with food and the time the interview commenced.[6]

¶14   As to the October 15 interview, Obregon asserts his confession was involuntary because it "was obtained by police promising (either in vain or else insincerely) to assist in the release of Mr. Obregon's mother from jail." Obregon's mother had earlier been taken into custody in Kenosha on suspicion of aiding Obregon's escape from authorities. Police tactics short of false promises usually are permissible, *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009), and Obregon points to nothing in the appellate record suggesting that law

---

[6] Obregon had the blanket pulled up over his head during much of the time he was resting, so it is unclear whether he was in fact sleeping.

enforcement promised his mother would be released from custody if he spoke to them. To the extent that the testimony can be construed as a promise to aid in her release, Detective Bliss testified he did make efforts to that end, including by suggesting on several occasions that the prosecutor reduce her bond. Her bond was, in fact, reduced, but her family was still unable to pay the modified bond.[7]

## II. *Validity of the Miranda Waivers*

¶15    Next, Obregon argues that the waiver of his rights following *Miranda* warnings was not knowing, intelligent, or voluntary. *See State v. Ward*, 2009 WI 60, ¶30, 318 Wis. 2d 301, 767 N.W.2d 236. A waiver is valid "where it is 'the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and has 'been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

¶16    Obregon's arguments on this point appear twofold. First, he asserts the "trauma" to which he was subjected—referring to the injuries sustained from the shooting and dog bite, as well as the fact that he was not provided a greater opportunity to sleep—rendered the waiver involuntary.[8] For the same reasons set forth above, we reject this argument. The facts do not demonstrate that Obregon's

---

[7] Obregon also argues that, independent of the situation with his mother, there was a "sufficient taint" from the circumstances of the first interview to render his statements during subsequent interviews involuntary. For the reasons explained above, we reject this argument because the statements he made during the October 13 interview were voluntary. This appears to be his only argument relating to the voluntariness of the October 16 interview.

[8] This argument would seemingly apply only to Obregon's waiver of his *Miranda* rights during the October 13 interview.

decision to speak with police was anything other than a product of his free and deliberate choice.[9]

¶17 Secondly, Obregon argues that the appellate record does not demonstrate that he understood his *Miranda* rights in the first interview or perceived that "the people asking him questions were not his friends but rather were police or law enforcement personnel who were trying to show he was guilty of a crime." The general rule is that the State establishes a prima facie case for a valid waiver when it demonstrates that the defendant was informed of all the rights and admonitions required by *Miranda* and the defendant indicates he or she understands them and is willing to speak to authorities. *State v. Lee*, 175 Wis. 2d 348, 360, 499 N.W.2d 250 (Ct. App. 1993).

¶18 The "countervailing evidence" Obregon proposes to rebut this presumption is unavailing. *See id.* at 361. Any notion that Obregon was confused or misunderstood his rights is belied by the record. On October 13, Obregon was read the *Miranda* warnings. He then asked to read for himself the information on the *Miranda* waiver form, and he was provided with as much time as he needed to do so. Detectives asked him if he understood the form or had any questions about it. Obregon then motioned for a pen and signed the form. Obregon's past encounters with the criminal justice system and exercise of his rights on some of those occasions further demonstrate the knowing, intelligent, and voluntary nature of his waiver.

---

[9] Obregon expressed a desire for more information about the status of his mother, to which the interviewing officers replied that they could give him more information if he waived his constitutional rights and spoke to them. Obregon does not appear to argue that his *Miranda* waiver was coerced on this basis. In any event, the detectives accurately informed Obregon that they would terminate the interview unless he consented to speak with them.

¶19 Additionally, we reject Obregon's assertion that he was confused about the identity of his interviewers. The detectives identified themselves as such at the inception of the interview. Obregon made statements before signing the *Miranda* waiver suggesting he understood the gravity of his situation. The fact that the detectives were cordial and somewhat friendly with Obregon does not undercut the validity of his *Miranda* waiver, in addition to further demonstrating that his statements were voluntarily made.

*III. Sixth Amendment Right to Counsel*

¶20 Finally, Obregon argues that his October 15 statement was obtained in violation of his right to counsel and should have been suppressed.[10] On October 14, Lake County initiated criminal proceedings against Obregon for alleged crimes in Illinois. A public defender was appointed for Obregon on that date. The Kenosha County detectives were unaware of the Lake County charges against Obregon or of his related court appearances, having been told by Lake County officials on the night Obregon was apprehended that he was being held on a Wisconsin warrant and that no charges would be filed in Illinois. And when Obregon mentioned during the October 15 interview that he had spoken with attorneys, the detectives "didn't know, if it was, again, because he had just been taken into custody and put in Lake County Jail and if he had met with the public defender." Detective Bliss testified he "wasn't aware of really what was … going

---

[10] Although not mentioned by Obregon, if he was correct that the October 15 statements were obtained in violation of his Sixth Amendment right to counsel, the October 16 statements would have to be suppressed as well. He did not have counsel present for that questioning, nor had he experienced a fourteen-day break in custody. *See State v. Delebreau*, 2015 WI 55, ¶59, 362 Wis. 2d 542, 864 N.W.2d 852. Because we reject his categorical argument that representation by counsel renders a defendant's *Miranda* waiver presumptively invalid, we have no need to further consider the admissibility of his October 16 statements.

on other than that there was some extradition type thing that was supposed to be happening."

¶21    Obregon argues that his questioning by Kenosha County detectives on October 15, which occurred after his Illinois counsel had been appointed, violated his Sixth Amendment right to counsel. The Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings and continues through all critical stages of the prosecution. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). According to the State, there is no Sixth Amendment problem in this case because Obregon was not charged in Wisconsin until November 4, 2015, and the Sixth Amendment right to counsel is offense specific. *See Texas v. Cobb*, 532 U.S. 162, 173 (2001).

¶22    Even if the State is correct on the law, it ignores Obregon's argument that extradition was already in the works and his Illinois counsel had been appointed in connection with those proceedings as well. At least in Wisconsin, it may be that a charged defendant can invoke his or her Sixth Amendment right to counsel during an extradition proceeding, although the matter appears to be unsettled. *See State v. Forbush*, 2011 WI 25, ¶26, 332 Wis. 2d 620, 796 N.W.2d 741 (plurality opinion). Obregon also argues in his reply brief that even if the Sixth Amendment right to counsel is offense-specific, his appointment of Illinois counsel should be tied to the Wisconsin offenses because the Illinois eluding charge was based on a course of conduct that began in Wisconsin.

¶23    In our view, all of these matters are rendered academic by virtue of *State v. Delebreau*, 2015 WI 55, 362 Wis. 2d 542, 864 N.W.2d 852. *Delebreau* contains an extensive discussion of the history of the Sixth Amendment right to counsel, culminating in the United States Supreme Court's decision in *Montejo*.

*See Delebreau*, 362 Wis. 2d 542, ¶¶19-39. According to *Delebreau*, the Supreme Court's holding in *Montejo* "is clear that a defendant is sufficiently apprised of his or her Sixth Amendment right to counsel by the *Miranda* warnings, and that a valid *Miranda* waiver effectively waives the Sixth Amendment right to counsel as well as the Fifth Amendment right to counsel." *Delebreau*, 362 Wis. 2d 542, ¶48.

¶24 The defendants in both *Montejo* and *Delebreau* were represented by counsel at the time they were administered *Miranda* warnings and waived their rights. *See Montejo*, 556 U.S. at 781-82; *Delebreau*, 362 Wis. 2d 542, ¶¶12-14. Contrary to Obregon's argument, those decisions made clear that the fact of representation does not result in the categorical exclusion of uncounseled statements.[11] As *Delebreau* put it: "Defendants are not entitled to a presumption that their waiver of the presence of counsel is invalid, even if they are already represented by counsel." *Delebreau*, 362 Wis. 2d 542, ¶48 (citing *Montejo*, 556 U.S. at 789-90).

¶25 Obregon attempts to distinguish *Delebreau*, arguing that in that case "the defendant had been represented at one court appearance by a staff attorney of the Wisconsin State Public Defender, but the decision does not show that that

---

[11] Although the Supreme Court rejected the defendant's assertion that his waiver was presumptively invalid, it did remand to provide the defendant with an opportunity to challenge the admissibility of his statements based on a claim that they were obtained in violation of an unequivocal request for counsel. *Montejo v. Louisiana*, 556 U.S. 778, 797-98 (2009). Here, before being administered *Miranda* warnings at the beginning of the October 15 interview, Obregon told detectives that he had met with attorneys who advised him not to talk to police unless they were present. The detectives responded that this was typical advice from attorneys and that the choice was ultimately his as to whether he wished to speak with law enforcement. On appeal, Obregon does not argue that his statement constituted an unequivocal and unambiguous request for counsel so as to render his subsequent statements inadmissible. *See State v. Edler*, 2013 WI 73, ¶32, 350 Wis. 2d 1, 833 N.W.2d 564. We therefore need not address that issue.

attorney was actually appointed to represent the defendant." This supposed distinction is unsupported by the case law and the appellate record. The limited scope of representation was of no significance to the *Delebreau* court's analysis of the defendant's Sixth Amendment right to counsel. *See id.*, ¶¶41-49. Moreover, the Illinois court case details that Obregon submitted in support of his motion do not demonstrate a more expansive scope of representation for his appointed Illinois attorney as of October 15.

¶26 Obregon also argues that *Delebreau* "wrongly interpreted" dicta in *Montejo* as a holding of the Supreme Court. Regardless of the merits of Obregon's attack on *Delebreau*, this court lacks the authority to provide any remedy for what he views as an erroneous statement of law by the Wisconsin Supreme Court. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case.").

## CONCLUSION

¶27 In summary, we conclude Obregon's statements during the three interviews were made voluntarily. We also conclude his waiver of rights following administration of *Miranda* warnings was knowing, intelligent, and voluntary. Finally, we reject his assertion that his statements during his October 15 interrogation were obtained in violation of his Sixth Amendment right to counsel.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

12