# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 11, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1972-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF71**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JERAD D. RAUSCH,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Calumet County: KENT R. HOFFMANN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jerad D. Rausch appeals a judgment of conviction for second-degree sexual assault, strangulation, false imprisonment, and two counts of misdemeanor battery, all as acts of domestic abuse.  He argues the circuit court erroneously concluded he failed to meet his burden to obtain in camera review of the victim's counseling records.  He also argues he received ineffective assistance of counsel as a result of his attorney's failure to file a suppression motion challenging the evidence obtained during the execution of a search warrant for his residence.  Specifically, he argues his attorney should have (1) argued his right to counsel was violated when police obtained passcodes to his cell phones while executing the search warrant after he had been charged, (2) challenged the sufficiency of the warrant affidavit as establishing probable cause, and (3) sought to invalidate the warrant as overbroad.  We reject these arguments and affirm.

## BACKGROUND

¶2     Rausch was charged with the crimes of conviction after his ex-girlfriend, Cindy,[1] drove to the Plymouth Police Department to report that Rausch had battered her while she was retrieving items of personal property from his residence after their breakup.  During the conversation with Officer Jeremiah Pritzl, Cindy disclosed other instances of abuse, including that a few months earlier Rausch had raped her and had prevented her from leaving the bed afterwards by strangling her.  Cindy told Pritzl that since the sexual assault, she had been seeing a counselor to deal with recurring nightmares.

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use a pseudonym when referring to the victim.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

¶3 Approximately one month after Rausch was charged, police executed a search warrant at his residence. The warrant authorized the seizure of, among other things, a black-and-white journal, any other writings, and any cell phones in Rausch's possession. Investigators Eric Voland and Derek Bries executed the warrant and recovered two cell phones, both of which were protected by a passcode. Rausch, who was present in the basement of the residence with both investigators, provided the passcode that unlocked both devices, and police made forensic copies of the phone data. The phone data included incriminating text messages between Cindy and Rausch, some of which were introduced at trial.

¶4 Rausch filed a pretrial motion seeking in camera inspection of Cindy's counseling records pursuant to *State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298 (known as a *Shiffra-Green* motion[2]). The defense, pointing to inconsistencies in Cindy's various descriptions of the incidents and the absence of physical evidence of sexual assault, argued the counseling records were relevant to Cindy's credibility. The circuit court determined Rausch's purported need for the records was speculative and his request was designed merely to "see if there is something in there," which was an insufficient showing under *Green*.

¶5 Rausch was convicted on all counts following a jury trial.[3] After sentencing, he filed a postconviction motion. As relevant here, the postconviction motion again challenged the circuit court's decision not to conduct an in camera review of Cindy's counseling records. Additionally, Rausch asserted his trial

---

[2] *See State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *abrogated by State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298.

[3] During closing arguments, Rausch conceded that he had battered Cindy on January 29 and April 13, 2017.

counsel was constitutionally ineffective for failing to challenge the admissibility of the evidence derived from the search warrant. Specifically, Rausch asserted the cell phone evidence was obtained in violation of his right to counsel and the search warrant was both unsupported by probable cause and overbroad.

¶6    The circuit court denied Rausch's postconviction motion. The court reaffirmed its ruling regarding Cindy's counseling records. Moreover, the court concluded trial counsel was not deficient for failing to challenge the search warrant, as the warrant was sufficiently particularized and the supporting affidavit established probable cause to believe that the relevant items would be located at Rausch's residence. Finally, the court determined that even though Rausch was represented by counsel at the time of the search warrant's execution, he had provided the passcode unprompted in response to a comment Bries made to Voland about the phones being passcode-protected. Because the passcodes were not derived from uncounseled questioning, the court concluded Rausch's right to counsel was not violated and there was no basis for a suppression motion.

¶7    Rausch filed a supplemental postconviction motion, asserting the circuit court's credibility finding that Bries was speaking to Voland about the passcodes was inconsistent with a sentence of Voland's police report regarding the search. Following another evidentiary hearing, the court credited Voland's explanation that his report was inaccurate and that Bries had, in fact, directed his statement to Voland and not Rausch. Accordingly, the court reaffirmed its conclusion that Rausch's right to counsel had not been violated. Rausch now appeals.

**DISCUSSION**

¶8    Rausch raises two primary issues on appeal.  First, he argues the circuit court erroneously denied his *Shiffra*-*Green* motion seeking in camera review of the victim's counseling records.  Second, he raises various instances of ineffective assistance of counsel relating to the sufficiency and execution of the search warrant.

*I.  In Camera Review of Counseling Records*

¶9    A *Shiffra*-*Green* motion must preliminarily demonstrate that the counseling records are reasonably likely to contain information necessary to a determination of guilt or innocence and that such information is not merely cumulative to other evidence.  *Green*, 253 Wis. 2d 356, ¶¶32-33.  Whether the defendant made a sufficient preliminary showing is an issue implicating the defendant's constitutional right to a fair trial and is therefore reviewed de novo. *Id.*, ¶20.  However, we review factual findings made by the circuit court under the clearly erroneous standard.  *Id.*

¶10    In support of the motion, Rausch noted that Cindy told police she had been seeing a counselor following the sexual assault to help her deal with nightmares.  The motion asserted it was therefore likely that Cindy had discussed the incident with her counselor.  The two-page motion made several conclusory allegations, such as that it was "reasonable to believe" that Cindy "shared additional details with her practitioner that she did not share with law enforcement" and that she "has remembered additional details of the alleged incidents since she met with law enforcement and has shared those additional details with her practitioner."  Aside from generically emphasizing the "intimate relationship between a practitioner and a patient," Rausch did not describe why he

5

believed the counseling would have led to additional disclosures or what those "additional details" might consist of, nor did he explain why this information was necessary to his defense.[4]

¶11    At the motion hearing, Rausch expounded upon the contents of his motion, asserting that the counseling records could contain information that would impugn Cindy's credibility and establish the date on which the sexual assault occurred. Rausch read extensively from police reports and charging documents, asserting that the counseling records might shed light on why Cindy had initially told police the sexual assault occurred on the same date as another act of battery and her motivation for wanting to speak with her counselor before disclosing the details of the sexual assault to police.

¶12    We agree with the circuit court that the motion, even when buttressed by Rausch's supporting arguments at the motion hearing, failed to establish that the counseling records were reasonably likely to contain information necessary to a determination of guilt. As the circuit court recognized, it was purely speculative that the records might have provided means to challenge Cindy's credibility that were not already present in the discovery. At the hearing, even Rausch's counsel acknowledged the tenuous strength of the motion, admitting that the records may contain no helpful information whatsoever but requesting that the court nonetheless "err[] on the side of caution" because of his perceived slight risk of harm to Cindy by in camera inspection of the records. Under the circumstances here, the mere possibility that Cindy's description of the

---

[4] Rausch merely asserted in his motion that "[t]his information is necessary to further the Defendant's Theory of Defense," without articulating what that theory actually was.

sexual assault to her counselor differed from what she had told police is insufficient to warrant the intrusion into the victim's privileged confidential communications. *See Green*, 253 Wis. 2d 356, ¶¶23, 33.

¶13    To the extent Rausch argued the counseling records were relevant to determine why Cindy wanted to speak with her counselor before disclosing the details of the sexual assault to police, the motion did not sufficiently explain the significance of this inquiry to Rausch's defense. If the notion is that the counseling records might show that Cindy fabricated the details of the assault in collaboration with her counselor, or that she otherwise lied about or misstated certain details of the assault, the motion fails for the reason stated above as being based on nothing more than speculation and conjecture. *See id.*, ¶33. If Rausch sought the records for some other defensive purpose, that purpose has not been adequately described even now on appeal.

¶14    Contrary to Rausch's claim, merely reciting the contents of the various police reports does not constitute an evidentiary showing sufficient to warrant in camera review. Rather, it is the defendant's burden to make a "fact-specific evidentiary showing, describing as precisely as possible the information sought from the records *and how it is relevant to and supports his or her particular defense*." *Id.*, ¶33 (emphasis added).

¶15    Additionally, to the extent the motion was predicated on a challenge to Cindy's credibility, the very information Rausch cited in support of his motion suggests the records were not reasonably likely to reveal information necessary to his defense. As Rausch extensively described at the motion hearing, the police reports from the various interviews provided a means to challenge Cindy's credibility. At trial, this information served as the basis for Rausch's questioning

Cindy during cross-examination about the inconsistencies between her testimony and her initial reporting to police.

¶16 Specifically, Cindy initially told police that the sexual assault had occurred on the same date as a later incident of battery. Cindy subsequently revealed that those incidents occurred on different dates, and she explained she initially combined those incidents because she did not want anyone to think she was crazy for staying with Rausch after he had sexually assaulted her. Although Rausch asserts that any disclosures to Cindy's counselor would likely have been "more recent and reflective of a time when she would have had a better ability to remember what happened," the time period involved here is *at most* approximately two months—hardly suggestive of a lengthy period of time in which memory may fade, particularly regarding an event that was traumatic enough to cause nightmares for which the victim sought counseling.

¶17 The State argues Rausch has failed to demonstrate that it was reasonably likely Cindy suffered from a mental disability that affected her ability to accurately recall events or testify truthfully. But Rausch has not claimed that the records were necessary for this reason, and such a showing is not necessary to obtain in camera review—though, to be sure, it is one way a defendant might demonstrate that in camera review is warranted. *See State v. Munoz*, 200 Wis. 2d 391, 399, 546 N.W.2d 570 (Ct. App. 1996). Instead, Rausch's motion failed for a more basic reason: it did not demonstrate that Cindy's counseling records were

reasonably likely to contain information necessary to a determination of guilt or innocence.[5]

## II. Ineffective Assistance of Counsel

¶18 Rausch alleges he received constitutionally ineffective assistance as a result of his attorney's failure to seek suppression of the evidence obtained during the search of his residence. First, he argues his attorney should have sought suppression of all evidence obtained from his cell phones, asserting that the passcodes to those phones were obtained in violation of his right to counsel. Second, he argues the search warrant was not supported by probable cause. Third, he argues the warrant lacked particularity. As set forth below, we conclude that there was no meritorious basis to seek suppression for the reasons Rausch advances. Accordingly, we reject his ineffective assistance of counsel claims. *See State v. Swinson*, 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12 ("[F]ailure to bring a meritless motion does not constitute deficient performance.").

¶19 The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.* We review an ineffective assistance of

---

[5] Both Rausch and the State rely on unpublished opinions in support of their arguments. The State's citation for persuasive value to an unpublished, authored opinion issued after July 1, 2009, is permissible under WIS. STAT. RULE 809.23(3)(b). By contrast, Rausch cites to an unpublished per curiam opinion, which is not permitted. *See id.* We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.* If the defendant fails to establish either prong, we need not address the other. *Id.*

¶20    To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

### A. Right to Counsel

¶21    Rausch first argues his attorney should have challenged the cell phone evidence as being obtained in violation of his right to counsel under the state and federal constitutions.[6] It is undisputed that at the time of the search warrant's execution, Rausch had been charged, invoked his right to counsel, and obtained an attorney, who in turn filed a notice of appearance earlier on the same day the warrant was executed. The Sixth Amendment right to counsel attaches at the time criminal charges are filed and continues during all "critical stages of the

---

[6] The right to counsel under the Wisconsin Constitution is generally regarded as coextensive with the right to counsel under the United States Constitution. *State v. Delebreau*, 2015 WI 55, ¶56, 362 Wis. 2d 542, 864 N.W.2d 852.

criminal process, including interrogations." ***State v. Delebreau***, 2015 WI 55, ¶¶25, 29, 362 Wis. 2d 542, 864 N.W.2d 852.[7]

¶22    As the circuit court recognized, the pertinent inquiry here is whether Rausch disclosed the cell phone passcode in response to questioning by the officials executing the search warrant. The court made a series of factual findings following the initial hearing on Rausch's postconviction motion.[8] It found that Rausch was out on bail and present at his residence at the time officers executed the search warrant. Voland explained the objects of the search and Rausch directed officers to the basement area of the home, which was divided by a hanging sheet into Rausch's sleeping quarters and a living room.[9]

¶23    Rausch turned over a cell phone, which Voland placed in airplane mode. Because he was able to do this, he assumed there was no passcode on it. He sent the phone with another officer to deliver to Bries, who was responsible for the forensic analysis of any phones recovered during the search. Bries received the phone while he was outside the residence, attempted to access it, and discovered that the phone was protected by a six-digit encrypted passcode. He then went to the basement to speak with Voland.

---

[7] It is undisputed that the officers did not obtain Rausch's waiver of the right to counsel during the search warrant's execution.

[8] Rausch gave a materially different account of the encounter than the one given by the officers. The circuit court specifically found Rausch not credible, and we therefore do not further elaborate on his testimony.

[9] The residence was apparently owned by Rausch's grandparents, with whom Rausch was living.

¶24 Voland was searching the bedroom area when Bries entered the basement. Bries informed Voland that there was a passcode on the phone, which Voland testified surprised him. Rausch was located in the living room portion of the basement, seated on a couch or chair behind where Bries and Voland were speaking. Voland turned toward Rausch and asked him whether the phone had a passcode. Rausch responded, "No." Bries then looked at Voland and said, "[W]ell[,] there is a pass code on the phone." The court specifically found this was a statement directed at Voland and not a question posed to Rausch. The court then found that Rausch, unprompted, told the officers that if there was a passcode, it was probably 544544.[10]

¶25 Rausch filed a supplemental postconviction motion challenging the circuit court's factual finding that Bries was speaking to Voland at the time he said there was a passcode on the phone. Specifically, and as relevant here, Rausch argued that Bries's testimony was contradicted by Voland's police report regarding the execution of the search, in which Voland wrote, "Special Inv. BRIES then stated to JERAD, 'Well, there's a passcode on the phone.'" Rausch's counsel stated he had overlooked the report as a basis to challenge the investigators' testimony, and he requested a supplemental evidentiary hearing to address the discrepancy.

---

[10] The circuit court accepted Voland's testimony that he then asked Rausch whether the passcode was the same for both phones. The court determined that this question was irrelevant to the Sixth Amendment analysis because law enforcement would not have needed an affirmative response to try the passcode on both phones. Rausch does not appear to argue on appeal that this question separately constituted a violation of his right to counsel, and we therefore do not address the issue. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (noting we will not abandon our neutrality to develop arguments on a party's behalf).

12

¶26    Voland and Bries testified at the supplemental postconviction hearing. At the conclusion of their testimony, the circuit court again found the officers credible. The court found that although Voland directed the question of whether the phones were passcode-protected to Rausch, the subsequent conversation was between Bries and Voland. Important to the court was that Bries and Voland testified consistently with their prior testimony and with one another. The court specifically found Voland's testimony credible that Bries was responding to him, and it accepted Voland's explanation that after he dictated the police report, he failed to adequately proofread it and catch that error.

¶27    Rausch has not met his burden of establishing the circuit court erred when making its factual findings. While the ultimate question of whether a defendant's right to counsel was violated is a question of law, we accept the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *Delebreau*, 362 Wis. 2d 542, ¶18. Voland was questioned extensively about the discrepancy between his report and his testimony, and he offered an explanation that the circuit court found credible. When there is a conflict in a witness's testimony, or between the witness's testimony and others, it is the province of the trier of fact to determine the weight and credibility to be given to the testimony. *Thomas v. State*, 92 Wis. 2d 372, 381, 284 N.W.2d 917 (1979). Voland's testimony was not patently incredible, and we have no basis to second-guess the court's credibility determination on this record.

¶28    The circuit court's factual determination undercuts Rausch's legal argument. The Sixth Amendment prohibits deliberate efforts by law enforcement to elicit incriminating information from the defendant in the absence of his or her counsel. *See Fellers v. United States*, 540 U.S. 519, 524 (2004); *Massiah v. United States*, 377 U.S. 201, 206 (1964). Formal interrogation is not a necessary

predicate, *Fellers*, 540 U.S. at 524, and law enforcement may run afoul of the Sixth Amendment even by statements that, while not questions, are directed to a defendant and designed to elicit information from him or her, *see Brewer v. Williams*, 430 U.S. 387, 392-93, 399 (1977) (addressing an officer's "Christian burial" speech).

¶29 Given the circuit court's factual findings here, we conclude that Bries and Voland did not deliberately elicit the phone passcodes from Rausch. Bries's statement that there was a passcode on the phone was directed to Voland, not Rausch. Rausch was seated behind the officers in a different area of the basement, and—though he was clearly within earshot—was not directly involved in the conversation with officers prior to the time Voland turned to ask whether there was a passcode on the phone. We regard Bries's comment to Voland as essentially a private refutation of Rausch's negative response to Voland's question—one meant to inform Voland of the factual circumstances present regarding their ability to execute the search warrant. Unlike the officer's statements in *Brewer*, Bries's statement here was not designed to elicit incriminating information from Rausch.

¶30 Rausch alternatively contends that although Bries might have been directing that particular statement to Voland, it was interwoven with Voland's prior question to Rausch about whether there was a passcode on the phone. Rausch therefore contends that the events "cannot be separated for purposes of the Sixth Amendment analysis." For this proposition, Rausch relies on *United States v. Henry*, 447 U.S. 264 (1980), in which the Supreme Court concluded that the defendant's incriminatory statements should be suppressed because they were obtained during conversations with a fellow inmate who was functioning as a paid government informant.

¶31 The Supreme Court's conclusion in *Henry* rested on a specious factual distinction the government attempted to draw between an informant who deliberately elicits incriminating information and one who merely engages the defendant in conversation. The government heavily relied on the fact that federal agents had instructed the informant not to question the defendant about the robbery, but to pay attention to any information the defendant offered. *Id.* at 271 & n.8. Nonetheless, the informant had engaged the defendant in conversation while incarcerated, demonstrating that the informant was not merely a "passive listener," but rather one who was attempting to deliberately elicit information. *Id.* at 271. Moreover, the Court rejected the notion that the government may secure the admissibility of incriminating statements made without counsel merely by admonishing an undercover informant against active questioning: "[e]ven if the agent's statement that he did not intend that [the informant] would take affirmative steps to secure incriminating information is accepted, he must have known that such propinquity likely would lead to that result." *Id.*

¶32 We cannot equate Voland's single question to Rausch, and the follow-up statement by Bries to Voland, as the equivalent of a jailhouse conversation between a defendant and a surreptitious government agent. The purpose of the arrangement described in *Henry* was, essentially, to spy on the defendant while confined in close quarters and relay to the government any incriminating statements he might make. The officers here were more akin to the hypothetical "passive listener" as Rausch interjected what he believed the passcodes might be. One officer's statement to another disputing a factual assertion made by a defendant does not necessarily invite a further response from the defendant, and under the circumstances here we do not view Bries's statement as an attempt to deliberately elicit further information from Rausch.

## B. *Probable Cause*

¶33    Next, Rausch argues his attorney was constitutionally ineffective for failing to seek suppression on the basis that the search warrant issued on less than probable cause, both to believe the cell phones contained incriminating information and to believe the items sought would be found at his residence. Probable cause exists if the warrant-issuing magistrate was "apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Starke*, 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978).  We accord great deference to the circuit court's determination of probable cause, which we will not overturn "unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991).

¶34    We reject both of Rausch's arguments regarding probable cause. The affidavit describes Cindy's allegations that Rausch battered and raped her at his residence during various altercations in January and April 2017.  Cindy provided police with written correspondence between her and Rausch in which Cindy expressed her disgust for Rausch, asserting that he had "wrapped [sic] me," "took my clothes off and watched me cry," and "put a pillow over my head to keep me qiute [sic]."  Rausch wrote back, stating, 'I [sic] so sorry for everything I[']ve done[.]  I know I am a horrible person."

¶35    Cindy told police Rausch had been committed to a mental health facility and had written about battering her in a black-and-white speckled journal while there.  Cindy stated she also kept a journal, and occasionally she and Rausch would exchange their journals to read each other's thoughts.  Cindy thought

Rausch might have kept his journal in his truck, but told police he had made recent statements suggesting he no longer had the journal.

¶36 In addition, the search warrant affidavit described Rausch's possession of at least one cell phone. Cindy told the police that during the sexual assault, Rausch turned on his phone's flashlight and held it "near her face so that he could watch her cry while he was having sex with her." Moreover, police records showed that in April 2017, before Rausch had been released on bail, he made a jail call to his parents in which he "referenced having a cell phone and that he did not want his parents to turn his cell phone over to 'Calumet County.'" Voland, the affiant, wrote that "based on the relationship between Jerad and [Cindy], their exchanging of journals and letters, and statements made by Jerad to prevent his phone from being turned over … the phone likely contains communication and/or images relating to the abuse by Jerad towards [Cindy]."

¶37 Rausch argues the affidavit did not provide any facts tending to show that either the journal or cell phone was likely to be at his residence. Rausch asserts the affidavit establishes that the journal was either in his truck or had been discarded. He also asserts the only reasonable inference regarding his cell phone was that it was in his parents' possession. Finally, he argues the information was stale, as his jail conversation occurred approximately one month before the search was executed and he had ample time to dispose of the cell phone upon his release.

¶38 Additionally, Rausch contends there was not probable cause to believe the cell phone contained evidence of a crime. Rausch points out that the affidavit does not contain any statement by Cindy that she and Rausch exchanged text messages or photographs. Moreover, he argues that his statement to his

17

parents that he did not want his cell phone turned over cannot establish probable cause to believe the phone contained anything incriminating.

¶39 At its core, Rausch's argument is that the circuit court drew unreasonable inferences from the information contained in the search warrant affidavit. To the contrary, our review of the affidavit suggests the court's determination comports with the "practical, nontechnical conception" that is probable cause. *See Illinois v. Gates*, 462 U.S. 213, 231 (1983). The contents of the affidavit clearly support an inference that Rausch had recent possession of both writings and a cell phone that quite probably contained evidence of criminal conduct. The cell phone specifically was used in the commission of the offense, and the court reasonably concluded there was a fair probability it contained relevant messages given the fact that Rausch and Cindy had communicated by other means about the offenses and Rausch took efforts to conceal the phone from authorities. It was also reasonable to infer that those items could be located at Rausch's residence, even if there were competing reasonable inferences that they could be found in other locations.

¶40 In all, while Rausch wishes the circuit court would have drawn different inferences from the search warrant affidavit, he provides us no basis to second-guess the court's determinations. "The fourth amendment does not deny law enforcement officers the support of the usual inferences which reasonable men draw from evidence." *Starke*, 81 Wis. 2d at 409. The facts contained in the warrant affidavit were sufficient to conclude there was a fair probability that the

journal and cell phone were linked to the commission of a crime and would be found at Rausch's residence.[11]

### C. Particularity and Overbreadth

¶41    Rausch also argues the search warrant authorized "the blanket seizure and search of all information regardless of the existence of probable cause" and was therefore defective.    In particular, he asserts the warrant was constitutionally infirm because it authorized the seizure of, among other things, "[a]ny and [a]ll correspondence, journals or other writings" and "[c]ell phone(s) in the possession or control of … Rausch," the latter of which the State was authorized to "forensically copy/inspect and visually examine electronic data stored therein."    Because the warrant did not contain any temporal limitations or specify the contents of, or parties to, the writings, Rausch contends the warrant was not sufficiently particularized.

¶42    Rausch's particularity argument is a nonstarter.    The particularity requirement ensures that the warrant "enable[s] the searcher to reasonably ascertain and identify the things which are authorized to be seized."    *State v. Sveum*, 2010 WI 92, ¶27, 328 Wis. 2d 369, 787 N.W.2d 317.    The warrant's references to correspondence, journals, writings and cell phones in Rausch's

---

[11] The State relies on *State v. Marquardt*, 2005 WI 157, 286 Wis. 2d 204, 705 N.W.2d 878, for the proposition that on appeal, competing reasonable inferences to be drawn from an affidavit must be construed in favor of the State. *See id.*, ¶44. Although we defer to a warrant-issuing magistrate's determination when reviewing the sufficiency of the affidavit, this particular standard of review in *Marquardt*, by its plain terms, applies only to the question of whether the warrant bore sufficient *indicia* of probable cause such that a reasonable officer could rely on it as authority for the search pursuant to the good-faith exception to the exclusionary rule. *Id. Marquardt* was clear that the "indicia" standard is a "less demanding" standard that "requires sufficient signs of probable cause, not probable cause per se." *Id.*, ¶37; *see also id.*, ¶28.

possession undoubtedly satisfied this requirement. Moreover, Rausch's assertion that more specificity was required is contrary to black-letter law. "A general description of the items to be seized is constitutionally acceptable when a more specific description is not available." *Id.*

¶43 The legal authority Rausch cites in support of his claim is easily distinguishable. In *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court noted the search warrant was "plainly invalid" because "it failed to identify any of the items that the [government] intended to seize." *Id.* at 554, 557. In the portion of the warrant that called for the description of the property to be seized, the government typed a description of the two-story house to be searched rather than the alleged stockpile of firearms to be seized. *Id.* at 554. The search warrant here was not similarly defective, and Rausch's trial counsel was not constitutionally ineffective for failing to raise a particularity challenge to the warrant.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.